OPINION OF THE COURT BY JUSTICE KELLER
*857 A Knox County Grand Jury indicted Jeremy Kelly (Kelly) for first-degree rape, incest (victim under 18), first-degree sexual abuse, and unlawful imprisonment, for allegations made by Kelly's sixteen-year-old daughter, J.K. Kelly was also indicted for second-degree fleeing or evading and being a persistent felony offender (PFO), second degree. The case ultimately went to trial in March 2017 and the jury convicted Kelly of first-degree rape, incest, first-degree sexual abuse, and second-degree fleeing or evading. At the penalty phase, the jury also found Kelly was a second-degree PFO. The jury recommended 50 years for rape, 50 years for incest, 10 years for sexual abuse, and 6 months for fleeing or evading. The jury recommended a consecutive sentence for a total of 110 years and 6 months. The court, however, capped the sentence at 70 years, pursuant to statute. Kelly now appeals as a matter of right.
I. BACKGROUND
In April 2013, J.K. was living with her great-uncle. On or about April 6, 2013, Kelly came to the bathroom window of the home and asked J.K. to shave her vaginal area and meet him elsewhere. J.K., knowing she was not supposed to leave the home, snuck out of the house and met Kelly. They spent several days at a campsite and a yellow house, where Kelly was staying. At a certain point at the yellow house, J.K. stated that Kelly started kissing her and touching her vagina over her clothes. Kelly then removed her clothing, held her down, and forcibly raped her. He completed the act by ejaculating on J.K.'s stomach. J.K. stated that she waited until Kelly fell asleep and then left the house. She went to her boyfriend's home and hid under a truck because she knew her boyfriend's parents did not like her. The parents did find her, however, and contacted authorities. J.K. was taken to the hospital and a rape kit was performed. The samples were sent to the Kentucky State Police Lab and it was ultimately determined that a sample of semen found on J.K.'s stomach matched Kelly's DNA.
Kelly was indicted by a Knox County Grand Jury on July 25, 2014 and the court issued a bench warrant for Kelly's arrest. The case remained on the court's docket while this warrant was pending. On December 15, 2014, the Commonwealth requested that the case be placed on the "fugitive docket" as the case had been pending for several months and Kelly had yet to be arrested on the warrant. The court ordered it so and entered a written order, dismissing the case without prejudice and stating that "upon the arrest of the defendant, the indictment may be reinstated and redocketed on motion of the Commonwealth."
Kelly was found in Washington and extradited back to Kentucky in late 2015. He was arraigned before the trial court on October 2, 2015. At that time, the Commonwealth moved the court to reinstate the indictment. The court sustained the motion, without objection from Kelly or his counsel. It is undisputed that there was never a new indictment presented. Nor is it alleged, however, that the charges presented at trial were different from the *858 charges in the dismissed and reinstated indictment.
As previously stated, the case proceeded to trial. The jury found Kelly guilty of rape first-degree, incest, sexual abuse first-degree, fleeing or evading second-degree, and being a PFO, second-degree. The court sentenced Kelly to 70 years imprisonment. On appeal, Kelly alleges five errors: (1) the indictment against Kelly was dismissed and prosecution absent a new indictment violated Kelly's due process rights; (2) there was no evidence to sustain Kelly's conviction for second-degree fleeing or evading; (3) the trial court should have granted a mistrial for the deliberate introduction of Kentucky Rule of Evidence (KRE) 404(b) testimony; (4) the rape, incest, and sexual abuse convictions were non-unanimous; and (5) the trial court improperly imposed a fine upon Kelly, who was indigent. We shall address each of these errors and discuss additional facts as necessary.
II. ANALYSIS
A. ALTHOUGH THE COMMONWEALTH ERRED IN FAILING TO RE-PRESENT THE CASE TO THE GRAND JURY, KELLY'S DUE PROCESS RIGHTS WERE NOT VIOLATED.
Kelly first argues that the indictment against him was dismissed and he was never re-indicted, thus his due process rights were violated per se. This allegation requires several nuanced issues to be addressed by this Court. First, we must determine whether the procedural singularity here of reinstating an indictment is proper. Second, if it is not proper, we must determine whether that affects the jurisdiction of the trial court. Finally, we must determine whether Kelly's due process rights were actually violated through a potentially flawed procedure.
1) The Commonwealth and the trial court erred in simply reinstating the indictment, rather than re-indicting Kelly.
In Commonwealth v. Sowell, this Court clearly held: "a dismissal without prejudice is a final and appealable order, and [ ] after dismissal without prejudice and loss of trial court jurisdiction, a defendant must be recharged." 157 S.W.3d 616, 617 (Ky. 2005). "Under [Kentucky Rule of Civil Procedure (CR) ] 59, a final judgment or order may be vacated only in accordance with the ten day provisions of the rule." Id. at 618. "Thereafter, the trial court loses jurisdiction to act." Id. (citing Commonwealth v. Gross, 936 S.W.2d 85 (Ky. 1997) ). The Commonwealth, after such an act, "could not merely redocket the old case as the trial court had lost jurisdiction to vacate its order of dismissal." Id.
Should the court or the prosecution desire to retain control of the case after the term, it may be done by an order filing the indictment away, to be redocketed on motion of the commonwealth. But, without such reservation, an unconditional dismissal is an end of that case. If, therefore, the commonwealth desires to reinstate the prosecution, it may do so by procuring another indictment, or by warrant of arrest sworn out before an examining magistrate, and then proceed as in other original prosecutions. The order dismissing the indictment, though a final order, does not bar another indictment or prosecution.
Id. at 618-19 (quoting Commonwealth v. Smith, 140 Ky. 580, 131 S.W. 391, 392 (1910) ). Our case law has clearly delineated the options for the Commonwealth. In Smith, the defendant was charged with murder. Smith, 131 S.W. at 391. His whereabouts were unknown so the court *859 dismissed the case. Id. When the matter came back before the trial court, the prosecution asked the court to "redocket" the case. Id. at 391-92. The trial court overruled the motion. Id. at 392. The trial court's decision was upheld by this Court's predecessor, outlining the options for the prosecution as quoted above. Id. There is no procedural mechanism for a mere reinstatement of an indictment after a dismissal without prejudice. The prosecution must seek another indictment or warrant just as in any original prosecution. The order of dismissal, even though it is without prejudice, cannot simply be undone.
This Court understands that the intent of the parties was simply to unclog the court's docket and put aside this particular case until Kelly was arrested on the outstanding warrant. It seems the trial court's intention was to revert to the pre-procedural rules days when indictments could simply be "filed away" from the court's docket. For example, in Jones v. Commonwealth, 71 S.W.643, 643 (Ky. 1903), the Commonwealth, being unprepared for trial, moved to have the indictment "filed away, with leave to redocket upon motion of the commonwealth's attorney." The motion was granted. Id. "The practice of filing away indictments, though never authorized by legislative enactment, has long obtained in this state." Id. In that case, the order "filing away" was construed as not being a dismissal. Id. at 644. "But here the right to reinstate the case on the docket being expressly reserved, the order, we think, should not be construed as a dismissal or discontinuance, but as a mere removal or omission of the case upon the docket." Id. Given this construction, "[t]he legal effect of such an order was simply a continuance indefinitely[.]" Id. In Jones, however, the case was "filed away" against the objection of defendant and deemed an abuse of discretion. Id.[1]
Despite this past practice, along with the development of our rules of civil and criminal procedure, our administrative court system has delineated a system for handling fugitive cases so as to prevent a court's docket from being hampered by numerous cases without any progression. These cases can be closed administratively in our case management system and reopened administratively upon service of a warrant. Trial courts and the Commonwealth are bound by the rules of procedure. The rules are unequivocal that an indictment is required, although subject to waiver, for a felony prosecution. See Ky. Const. 12 and Malone v. Commonwealth, 30 S.W.3d 180 (Ky. 2000). It is questionable whether the trial court was in error in allowing the reinstatement of the indictment or in terming the 'filing away' of the indictment as a dismissal. Under these pre-rule cases, such a "filing away" with reservation for reinstatement, has been deemed a non-final and non-dismissive order. In either context, the procedure utilized by the trial court was error. Thus, this Court holds that reinstatement of an indictment is procedurally impermissible. Additionally, it is important to remember that there are administrative processes for handling fugitive cases and it is best practice to follow these procedures. We cannot say that such procedural infirmities would never create reversible error.
2) The trial court still retained subject-matter jurisdiction over Kelly's case *860 and Kelly waived particular-case jurisdiction.
Because reinstatement of the indictment was procedurally infirm, and because we cannot fully determine whether this order was, in effect, a dismissal or a "filing away," we are forced to determine whether the trial court even had jurisdiction to hear Kelly's case. Both Sowell and Smith state that ten days after the final order of dismissal, the trial court loses jurisdiction over the case. See Sowell, 157 S.W.3d at 619 and Smith, 131 S.W. at 392. This mechanism is pursuant to CR 59, which states that a motion altering, amending, or vacating a judgment must be served no more than ten days after entry of the final judgment. However, this loss of jurisdiction refers to particular-case jurisdiction, rather than subject-matter jurisdiction.
"Whether a court has subject-matter jurisdiction is determined at the beginning of a case, based on the type of case presented." Commonwealth v. Steadman, 411 S.W.3d 717, 722 (Ky. 2013). "[A] court 'will retain jurisdiction over such a case so long as jurisdiction was proper in the first place." ' Id. (quoting Leonard v. Commonwealth, 279 S.W.3d 151, 156 (Ky. 2009) ). "Indeed, once a court has acquired jurisdiction, no subsequent error or irregularity will remove that jurisdiction, so that a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law, or both." Commonwealth v. Adkins, 29 S.W.3d 793, 795 (Ky. 2000) (citing Am.Jur.2d Criminal Law § 480 (1998) (citing People v. Veling, 443 Mich. 23, 504 N.W.2d 456 (1993) ) and People v. Davis, 156 Ill.2d 149, 189 Ill.Dec. 49, 619 N.E.2d 750 (1993) ). "Once filed, a court has subject matter jurisdiction of the case so long as the pleadings reveal that it is the kind of case assigned to that court by a statute or constitutional provision." Daugherty v. Telek, 366 S.W.3d 463, 467 (Ky. 2012). "A court, once vested with subject matter jurisdiction over a case, does not suddenly lose subject matter jurisdiction by misconstruing or erroneously overlooking a statute or rule governing the litigation." Id.
However, the notion of subject-matter jurisdiction is separate and distinct from particular-case jurisdiction. "Subject matter jurisdiction refers to a court's authority to determine 'this kind of case' (as opposed to 'this case')." Commonwealth v. Griffin, 942 S.W.2d 289, 290-91 (Ky. 1997) (quoting Duncan v. O'Nan, 451 S.W.2d 626, 631 (Ky. 1970) ). Particular-case jurisdiction "refers to a court's authority to determine a specific case (as opposed to the class of cases of which the court has subject matter jurisdiction)." Steadman, 411 S.W.3d at 722 (quoting Griffin, 942 S.W.2d at 290 ). This Court has specifically held that "[a] court's power to affect its own judgment within ten days of entry or after the filing of a notice of appeal is this latter category: jurisdiction over a particular case. Such questions go more accurately to the propriety of the exercise of jurisdiction rather than to the existence of jurisdiction." Steadman, 411 S.W.3d at 722-23.
Felony prosecutions are squarely within the subject-matter jurisdiction of the circuit courts and there is no claim that this particular case originally failed in some way to trigger that jurisdiction. Thus, the case was properly before the circuit court at the inception of the case. Subject-matter jurisdiction was invoked properly. Therefore, any loss or issue arising from procedural defects instead refers to the trial court's particular-case jurisdiction over Kelly's case specifically. Particular-case "jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts, *861 such as that an action was begun before a limitations period expired." Id. at 724 (quoting Nordike v. Nordike, 231 S.W.3d 733, 738 (Ky. 2007) ).
As in Steadman, the trial court would have lost particular-case jurisdiction over Kelly's case if the indictment was dismissed. The order was entered months before Kelly was brought back before the court. However, unlike subject-matter jurisdiction, particular-case jurisdiction is subject to waiver. Steadman, 411 S.W.3d at 724. Errors in particular-case jurisdiction "are allegations of pure legal error and not of a failure of the court's power to act at all. And particular-case jurisdiction is subject to waiver." Id. (emphasis original). See also Griffin, 942 S.W.2d at 291 (quoting Collins v. Duff, 283 S.W.2d 179, 182 (Ky. 1955) ) ("[a] lack of jurisdiction of the particular case, as dependent upon the existence of particular facts, may be waived.").
On October 2, 2015, Kelly was brought before the trial court on arraignment. He was appointed a public defender. The Commonwealth stated that the case had been dismissed due to Kelly's fugitive status, and "move[d] to reinstate" the indictment. The trial court sustained the motion. Defense counsel did not object nor raise any potential issues with this reinstatement. Additionally, Kelly did not raise the jurisdictional issue until appeal.
Kelly waived any issue relating to particular-case jurisdiction. This is not to say that the trial court did not err. Reinstatement of an indictment is not the proper procedure. Had Kelly brought this issue to the trial court's attention, and the trial court determined its original order was a dismissal, Kelly would have been entitled to dismissal. The prosecution would have been forced to re-indict Kelly. However, this Court will not allow Kelly to ignore an issue, fail to bring the situation to light until after a conviction, and then succeed in obtaining a dismissal of his case on a purely procedural technicality. This issue was one of particular-case jurisdiction. Kelly, through his silence, effectively waived any potential error as to particular-case jurisdiction. The trial court retained proper subject-matter jurisdiction over the case as a felony in that county.
3) Kelly has failed to show any prejudice from the procedural effects which would lead to a finding of a due process violation.
Despite the prior holdings, we must still determine whether Kelly's due process rights were violated by the procedural flaw in the indictment process here. This Court has previously stated the constitutional requirements of an indictment:
Under the Due Process Clause, the sufficiency of an indictment is measured by two criteria: first, that an indictment sufficiently apprise a defendant of the criminal conduct for which he is called to answer; and, second, that the indictment and instructions together provide adequate specificity that he may plead acquittal or conviction as a defense against any future indictment for the same conduct and that he not be punished multiple times in this action for the same offense.
Schrimsher v. Commonwealth, 190 S.W.3d 318, 325 (Ky. 2006) (citing Russell v. United States, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) and Valentine v. Konteh, 395 F.3d 626, 634-35 (6th Cir. 2005) ). The federal courts have similarly held:
[A] valid indictment must fulfill two distinct functions. First, an indictment must inform the accused of the nature of the charges against him, with such specificity and particularity that the accused is enabled to undertake and prepare an *862 adequate defense. Second, an indictment must be so framed that it should be evident to what extent a plea of double jeopardy is available to the accused in the event of future charges involving similar offenses ... Not all lapses from prevision and correctness require that an indictment be quashed. Nonprejudicial errors and defects do not invalidate indictments which otherwise fulfill the two prime requisites ...
Payne v. Janasz, 711 F.2d 1305, 1312 (6th Cir. 1983) (quoting United States v. Levinson, 405 F.2d 971, 977 (6th Cir. 1968) ) (emphasis added). Additionally, under federal law, a "constitutionally deficient indictment is subject to harmless-error review." Williams v. Haviland, 467 F.3d 527, 535 (6th Cir. 2006) (citing United States v. Cor-Bon Custom Bullet Co., 287 F.3d 576, 580 (6th Cir. 2002) ).
The courts are reticent to apply rules of technicality in determining an indictment is constitutionally infirm. "The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial will be disregarded." Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932).
The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'
Id. (quoting Cochran v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 39 L.Ed. 704 (1895) and citing Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 480, 40 L.Ed. 606 (1896) ). An indictment protects three Constitutional due process rights under federal law:
The Sixth Amendment's right to fair notice of the criminal charges against which one will need to defend; and the Fifth Amendment's dual protections against twice placing a defendant in jeopardy for the same offense, and holding the defendant to answer for crimes not presented to or indicted by a grand jury.
United States v. Combs, 369 F.3d 925, 935 (6th Cir. 2004) (citing United States v. Pandilidis, 524 F.2d 644, 648 (6th Cir. 1975) ). Thus, "where these rights are not threatened, rules governing indictments should not be applied in such a way as to defeat justice fairly administered." Combs, 369 F.3d at 935 (quoting Pandilidis, 524 F.2d at 648 ). Furthermore, pursuant to Rule of Criminal Procedure (RCr) 6.12, "[a]n indictment ... shall not be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected by reason of a defect or imperfection that does not tend to prejudice the substantial rights of the defendant on the merits."
Rather than alleging any prejudice arising from the deficiency of the indictment, Kelly merely asserts that the error was "no mere technicality" and the entire prosecution against him was a "per se violation" of his constitutional rights. Kelly had over a year from the date of his arraignment to his trial date. He presented a robust defense, including his own testimony as to the events in this case. There is no allegation that he was not presented with sufficient information in the indictment, only that the indictment was procedurally insufficient. However, we choose not to infer prejudice from such a defect. Thus, we hold that despite the procedural mistakes made in reinstating the indictment, *863 Kelly had fair notice of the charges and adequate sufficiency about the content of those charges. Under such circumstances, Kelly's due process rights were not violated.
B. THE COMMONWEALTH CONCEDES THAT THERE WAS INSUFFICIENT EVIDENCE FOR KELLY'S CONVICTION OF SECOND-DEGREE FLEEING OR EVADING.
The Commonwealth concedes that it failed to present any evidence that would sustain a conviction for second-degree fleeing or evading. As a consequence, this Court must vacate the conviction for second-degree fleeing or evading.
C. THE TRIAL COURT DID NOT ERR IN FAILING TO GRANT A MISTRIAL.
Kelly's next allegation of error asserts that he should have been granted a mistrial after J.K. testified to Kentucky Rule of Evidence (KRE) 404(b) evidence that had been excluded by the trial court. The particular questioning on direct, after J.K. had described the rape in detail, was:
Commonwealth (CW): Did this just happen that one time?
J.K.: No.
CW: Did it happen more than once?
J.K.: On this night, no.
CW: But it happened again on another night?
J.K.: It happened several times before.
At this point, defense counsel objected and the attorneys went to the bench. There was some disagreement at the bench as to whether this "several times" referred to prior incidents further removed in the past or to incidents that had occurred over this specific period of days at the campsite and the yellow house. Defense counsel specifically stated that J.K.'s statement had been so soft that she believed an admonition would draw more attention to the statement. The Commonwealth stated he could be more direct to limit the testimony to this particular incident. The judge did sustain the motion and stated KRE 404(b) evidence had been excluded. At no time did defense counsel request a mistrial. The questioning then continued.
CW: Let me clarify. I don't think I understood what you said. So it happened this time. After the time you just told the jury about. Did it happen again at the house that-after that?
J.K.: Yeah.
CW: Did it happen more than one time?
J.K.: I don't remember.
C.W.: Do you remember how long you were at the house?
J.K.: I think I was there-I don't remember. I think I was there one day or two.
The prosecution then moved on to the rest of J.K.'s testimony. At no time during or after J.K.'s testimony did defense counsel request an admonition or mistrial.
We must first acknowledge that this alleged error is simply unpreserved for review. "To preserve an error for review, a party must timely bring the error to the court's attention and 'make [ ] known to the court the action he desires the court to take." ' Wallace v. Commonwealth, 478 S.W.3d 291, 296 (Ky. 2015) (quoting RCr 9.22 ; citing West v. Commonwealth, 780 S.W.2d 600, 602 (Ky. 1989) ). "And a party claiming entitlement to a mistrial must make a timely request for such relief." Wallace, 478 S.W.3d at 296 (citing Jenkins v. Commonwealth, 477 S.W.2d 795, 797-98 (Ky. 1972) ) (emphasis added). "[W]here an admonishment is sufficient to cure an error and the defendant fails to ask for the admonishment, we will not review the error." Coulthard v. Commonwealth, 230 S.W.3d 572, 578 (Ky. 2007) (quoting *864 Lanham v. Commonwealth, 171 S.W.3d 14, 28-29 (Ky. 2005) ). Succinctly, "a defendant still has to ask for a remedy in order to get the remedy." Lanham, 171 S.W.3d at 29.
Here, Kelly did not request a mistrial. He did not request an admonition to the jury. In fact, defense counsel specifically spoke against the judge giving an admonition. Therefore, at most this issue merits palpable error review pursuant to RCr 10.26. With that framework, we cannot hold that any error here negatively affected Kelly's "substantial rights." See RCr 10.26. First, the trial court made no written order regarding any KRE 404(b) evidence. Thus, it is unclear to this Court the specific boundaries of any order made by the trial court. Second, the statements here are confusing at most. J.K. stated it happened several times, but then stated it happened once, and then stated she did not remember how many times it happened. If anything, it supported the defense's cross-examination in reference to J.K.'s credibility. Even if the statements were admitted in error, with the brief and soft-spoken statement, an admonition would have been sufficient to cure any potential prejudice. Kelly's substantial rights under RCr 10.26 were not affected here. Taking into account the foregoing circumstances and in the absence of a request for mistrial, we do not determine that a mistrial should have been granted.
D. THE VERDICTS ARE UNANIMOUS.
Kelly also alleges that his verdicts for rape, incest, and sexual abuse were not unanimous. His argument stems from more recent case law, holding that testimony of multiple incidents that fit the definition of the jury instruction, even when only one count is charged, violates a defendant's right to a unanimous verdict. The Court has held "that such a scenario-a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof-violates the requirement of a unanimous verdict." Johnson v. Commonwealth, 405 S.W.3d 439, 449 (Ky. 2013). See also Kingrey v. Commonwealth, 396 S.W.3d 824 (Ky. 2013) ; Martin v. Commonwealth, 456 S.W.3d 1 (Ky. 2015) ; Ruiz v. Commonwealth, 471 S.W.3d 675 (Ky. 2015) ; and Jenkins v. Commonwealth, 496 S.W.3d 435 (Ky. 2016). Kelly concedes the issue is unpreserved and requests palpable error review under RCr 10.26.
The gist of Kelly's argument is that the proof presented at trial proved more than one incident of rape, incest, and sexual abuse. As such, it is unclear that the jury agreed as to the same incident of rape, incest, and sexual abuse. However, even given the majority of the Court's more recent, and stricter, analysis of unanimity, Kelly's argument is illusory. The evidence Kelly points to that allegedly "proved" more than one incident was within J.K.'s testimony and Deputy Hensley's testimony.
As stated previously, J.K. made one statement about some kind of abuse happening "several times." However, she made no specific statements about any other incidents. It was not even clear that she remained consistent that it happened more than once. J.K. spoke in gruesome detail about the particular incident of rape on the night of April 8. She gave intimate details about the ordeal. Her testimony did not speak of any other incidents.
Deputy Hensley was one of the responding officers. He spoke with J.K. in some detail about what had occurred. As he started testifying, he spoke about some of J.K.'s statements to him at that time. The judge actually called the attorneys to the bench to address the issue of J.K.'s statements *865 coming in through the officer. Defense counsel specifically stated that she wanted all of J.K.'s statements to come in. The defense's theory was that J.K. was not credible because her story was inconsistent. Thus, they elicited J.K.'s statements to Deputy Hensley to show these inconsistencies. As a result of this strategy, Deputy Hensley made two statements about multiple incidents. On direct examination, he stated that J.K. had told him that Kelly had engaged in "sexual contact" with her at the campsite "multiple times." On cross, defense counsel asked Deputy Hensley if J.K. had told him about any "inappropriate contact" at the campsite. Deputy Hensley stated that, yes, she had stated Kelly had "kissed" and "touched" her and they "had intercourse."
In Travis v. Commonwealth, the jury was instructed as to defendants' PFO eligibility. 327 S.W.3d 456, 463 (Ky. 2010). There was admittedly superfluous language in the instructions. Id. However, this Court determined that "such flawed instructions only implicate unanimity if it is reasonably likely that some members of the jury actually followed the erroneously inserted theory in reaching their verdict." Id. In contrast, "if there is no reasonable possibility that the jury actually relied on the erroneous theory-in particular, where there is no evidence of the theory that could mislead the jury-then there is no unanimity problem." Id. (emphasis added). "[T]he error is simply harmless because there is no reason to think the jury was misled." Id. In Travis, the Court determined there was "no evidence" to support the "erroneous theories." Id. "Thus, there was no reason at all for any juror to convict either of them ... under those erroneous theories." Id. In Travis, the error was also unpreserved and the Court determined "reversal [was] certainly not warranted under that higher threshold." Id.
The situation before the Court now is much more similar to Travis than to the other cases where the majority has reversed for want of unanimity in the final verdict. In the line of cases mandating reversal, the victims usually testified in great detail about ongoing courses of conduct or multiple incidents. There was testimony about multiple, specific incidents from which jurors could find guilt. Here, at most are a couple of fleeting statements about amorphous, unspecified prior incidents. J.K.'s testimony hardly rises to the level of giving specific information about any other incidents. The most information was from Deputy Hensley, and it was all based on hearsay testimony. Given these brief, fleeting statements, it would be wholly unreasonable for a juror to find one of these vague incidents amounted to proof beyond a reasonable doubt when J.K. spoke of one particular incident in detail. This case does not even rise to the level of Travis, because it was only testimony that led to a potentially erroneous theory rather than an actual instruction to the jury. There was no reason for any juror to convict Kelly of rape, incest, or sexual abuse based on the vague surplus statements in question. As such, unanimity of the jury verdict is preserved. As Justice Hughes stated in her concurring opinion in Travis:
The real threat to fairness, integrity and public opinion of these particular proceedings would come from overturning a verdict, where the instructions were sufficiently specific and the evidence was sufficient for conviction, based on a unanimous verdict theory that requires us to assume wholly implausible, if not completely irrational, behavior on the part of a juror or jurors.
Id. at 468 (Hughes, J., concurring in result only).
*866 We also must acknowledge that any error here, was, to a certain extent, invited error. "Generally, a party is estopped from asserting an invited error on appeal." Quisenberry v. Commonwealth, 336 S.W.3d 19, 37 (Ky. 2011) (citing Gray v. Commonwealth, 203 S.W.3d 679 (Ky. 2006) ). "Invited errors amount to a waiver and are not subject to appellate review." Webster v. Commonwealth, 438 S.W.3d 321, 324 (Ky. 2014) (citing Thornton v. Commonwealth, 421 S.W.3d 372, 376-77 (Ky. 2013) ). This Court has even determined that a statement violating a defendant's Miranda rights admitted at trial can be determined to be invited error. See Clay v. Commonwealth, 2012-SC-000421-MR, 2014 WL 4160134 (Ky. Aug. 21, 2014). Here, defense counsel admitted it was strategy to elicit as many of J.K.'s statements as she could through Deputy Hensley's testimony. The fact that some of those statements may have led to prior incidents being vaguely referenced was an invited error. As such, we will not find reversible error here. The statements in question were too attenuated for a reasonable juror to rely upon them in finding guilt and the statements were, in all likelihood, elicited as invited error.
E. THE COMMONWEALTH CONCEDES THAT THE TRIAL COURT ERRED IN IMPOSING A FINE ON AN INDIGENT DEFENDANT.
The Commonwealth has also conceded the fine imposed upon Kelly was impermissible. Kelly had been found to be indigent and, as such, a fine could not be imposed under KRS 534.040(4). Therefore, we shall vacate that portion of the trial court's order imposing a fine.
III. CONCLUSION
For the foregoing reasons, we affirm Kelly's convictions and sentences for first-degree rape, incest, and first-degree sexual abuse. We do, however, vacate the conviction for second-degree fleeing or evading and the portion of the trial court's judgment imposing a fine.
All sitting.
All concur.

See also Van Arsdale v. Caswell, 311 S.W.2d 404, 408 (Ky. 1958) ("An order 'filing away' an indictment or a criminal warrant is not a final determination thereof but is an indefinite continuance of the case which may be reinstated on the docket upon reasonable notice at any time after such an order is entered. It is error ... to enter an order 'filed away' over the objection of the accused....").