RENDERED: MAY 23, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0156-MR

YORIG R. REYES                                          APPELLANT

v.          APPEAL FROM CHRISTIAN CIRCUIT COURT
            HONORABLE ANDREW SELF, JUDGE
            ACTION NO. 85-CR-00118

COMMONWEALTH OF KENTUCKY                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Acting *pro se*, Yorig Reyes appeals from the Christian Circuit Court's denial of his Kentucky Rule of Civil Procedure (CR) 60.02 motion for postconviction relief. We affirm.

This case has an unusual procedural history. Reyes and another person, Lavassa Anderson, robbed a store, forced two store clerks to engage in sexual acts, then shot both clerks. One clerk died, one survived. *Commonwealth v. Reyes*, 764 S.W.2d 62, 63 (Ky. 1989). "After a telephone conversation between

the sheriff and the Assistant Commonwealth Attorney, Reyes was told that the Commonwealth Attorney's office had promised not to seek the death penalty if Reyes would tell the truth." *Id.*

Reyes then cooperated with the Commonwealth in its case against Anderson. All the while, Reyes stated that he had fired the shot which killed one store clerk. Bizarrely, however, the Commonwealth "never did become aware of the fact that Reyes was confessing to killing the deceased victim, and proceeded as if Reyes had shot the survivor. He was indicted for complicity in the murder, and Anderson was indicted for the murder." *Id.*

Before Anderson's trial began, Reyes and the Commonwealth reached a plea agreement which spared Reyes from the death penalty. But after Anderson's trial began, ballistics testing convinced the Commonwealth that Anderson's gun had not fired the fatal shot. *Id.* at 64. Anderson's trial was then continued, and Reyes was indicted for murder. Reyes states in his brief that the trial court granted the Commonwealth's motion to dismiss the original indictment, but he does not provide a pinpoint cite to where we may view that order of dismissal in the voluminous record. In a role reversal, Anderson then agreed to cooperate against Reyes.

Reyes then sought to require the Commonwealth to honor the plea agreement reached before the second indictment was returned. *Id.* The trial court granted the motion, over the Commonwealth's opposition.

In the course of reaching that decision, the trial court dismissed the second indictment (charging Reyes with murder) and reinstated the first indictment (charging Reyes with complicity to murder). Doubtlessly because the decision was wholly favorable to him, there is no indication Reyes objected to the highly unorthodox reinstatement of a previously dismissed indictment and the dismissal of a then-pending indictment. The Commonwealth appealed, but our Supreme Court affirmed the decision to require the Commonwealth to honor the plea agreement. *Id.* at 64-68. Our Supreme Court noted that Reyes had been indicted twice but did not meaningfully discuss the dismissal, or reinstatement, of the first indictment – though logically enforcing the plea agreement inherently had to make the first indictment operative and the second inoperative because the agreement involved the charges in the first indictment.

Thus, in March 1989, Reyes was sentenced to life imprisonment for complicity to murder, and twenty years' imprisonment each on the other offenses, including sodomy and robbery. In a sentencing approach which was then permissible, the term of years sentences were ordered to be served consecutively to the life sentence. Reyes did not appeal.

The record then is silent for over thirty years until June 2020, when Reyes filed a CR 60.02 motion seeking to suspend further execution of his sentence due to the COVID-19 pandemic. The trial court denied that motion. Reyes did not appeal.

Over two years later, Reyes filed the CR 60.02 motion at hand (to which he later filed supplements). The motion was thus filed roughly thirty-three years after Reyes was sentenced. The trial court denied the motion, after which Reyes filed this appeal.

Before we begin our substantive discussion of the issues, we first note that our analysis does not precisely track that utilized by the trial court. However, "it is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009). Also, we have examined the parties' briefs but conclude matters raised therein which we do not discuss are without merit, irrelevant, or redundant. *See Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

"It is within the sound discretion of the trial court whether to grant or deny relief pursuant to CR 60.02. Thus, we will reverse only upon a finding of an abuse of that discretion." *Priddy v. Commonwealth*, 629 S.W.3d 14, 17 (Ky. App. 2021). "The test for abuse of discretion is whether the trial judge's decision was

arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014).

Reyes raises several arguments. Because the remainder of his claims are clearly untimely, the only two we shall address on the merits are his assertions that his sentence is illegal and that the trial court lacked jurisdiction to sentence him pursuant to the original indictment. The remainder of Reyes's sundry claims are fatally flawed for three main reasons.

First, the trial court did not abuse its discretion in concluding that Reyes's claims, which do not involve newly discovered evidence, were not brought within a reasonable time, as required by CR 60.02(f). Of course, "there is no specific prescribed time within which claims made pursuant to CR 60.02(e) or (f) must be filed." *Priddy*, 629 S.W.3d at 18. But Reyes waited roughly thirty-three years after his sentencing to submit the CR 60.02 motion at hand, and motions submitted much more quickly have been deemed untimely. *See, e.g.*, *Djoric v. Commonwealth*, 487 S.W.3d 908, 910 (Ky. App. 2016) (nearly thirteen-year delay unreasonable); *Graves v. Commonwealth*, 283 S.W.3d 252, 257 (Ky. App. 2009) (seven-year delay unreasonable).

Second, this is Reyes's second CR 60.02 motion. Precedent plainly holds that "CR 60.02 does not permit successive post-judgment motions . . . ." *Foley*, 425 S.W.3d at 884. Reyes has not adequately shown why he could not have

-5-

earlier raised the issues in his second CR 60.02 motion in his first CR 60.02 motion, or in a motion pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42.  In sum, the motion is fatally successive.

Third, Reyes's motion is procedurally improper.  Reyes is seeking relief under CR 60.02 without having first sought relief under RCr 11.42.  As our Supreme Court has held:  "The structure provided in Kentucky for attacking the final judgment of a trial court in a criminal case is not haphazard and overlapping, but is organized and complete.  That structure is set out in the rules related to direct appeals, in RCr 11.42, and *thereafter* in CR 60.02."  *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983) (emphasis in *Gross*).  For example, some of Reyes's claims involve allegations of ineffective assistance of counsel and our Supreme Court has expressed a strong preference for such claims to be raised in an RCr 11.42 motion.  *Furnish v. Commonwealth*, 95 S.W.3d 34, 52 (Ky. 2002) (holding that ineffective assistance of counsel claims "are not properly raised on direct appeal, but rather must proceed by way of a post-trial motion under RCr 11.42").

Singularly and collectively, those three fundamental principles inherently doom all of Reyes's claims, except Reyes's assertion that his sentence is illegal and that the trial court lacked jurisdiction to sentence him.

Reyes contends the fact that the term of years sentences were ordered to run consecutively to his life sentence renders the overall combined sentence

illegal. A sentence which violates statutory sentencing limits is an illegal sentence and "the defendant's timeliness in bringing the attack [against an illegal sentence] is immaterial." *Phon v. Commonwealth*, 545 S.W.3d 284, 303 (Ky. 2018). However, despite his arguments to the contrary, Reyes's sentence is not illegal.

When Reyes was sentenced, it was permissible to order a sentence for a term of years to be served consecutively to a life sentence. *See Rackley v. Commonwealth*, 674 S.W.2d 512, 515 (Ky. 1984). In short, Reyes's sentence "was therefore legal at the time it was imposed." *Commonwealth v. McKinney*, No. 2023-SC-0457-DG, 2025 WL 555125, at *1 (Ky. Feb. 20, 2025) (final March 13, 2025).

However, in 1993, our Supreme Court overruled *Rackley*. *See Bedell v. Commonwealth*, 870 S.W.2d 779 (Ky. 1993). Thus, since *Bedell* was issued in 1993, it has been "improper to order a term of years sentence to run consecutively with a life sentence." *Stewart v. Commonwealth*, 153 S.W.3d 789, 792 (Ky. 2005). In 2022, we held in *Meadows v. Commonwealth*, 648 S.W.3d 701, 705 (Ky. App. 2022), that *Bedell* applied retroactively.

However, during the pendency of this appeal, our Supreme Court overruled *Meadows* and instead held that *Bedell* "may not be applied retroactively on collateral attack." *McKinney*, 2025 WL 555125, at *3. The upshot is this: Reyes's sentence was permissible at the time it was imposed. The law then

-7-

changed, but our Supreme Court in *McKinney* plainly held that the new law (the prohibition in *Bedell* against running a sentence for a term of years consecutively to a life sentence) does not apply retroactively to invalidate sentences which were permissible at the time they were imposed. Our Supreme Court in *McKinney* essentially rejected the same arguments Reyes makes. Consequently, the trial court did not abuse its discretion by denying Reyes's CR 60.02 motion.

Finally, we also reject Reyes's argument that his sentence is void because the trial court lacked the ability to reinstate the first indictment and thus lacked jurisdiction to sentence him pursuant to the charges contained therein. The Commonwealth unfortunately does not meaningfully address this argument in its extremely terse brief. We must address this claim on the merits because "an alleged lack of subject-matter jurisdiction is one of those issues that may be raised at any time, even by the court itself. It cannot be consented to, agreed to, or waived by the parties." *Commonwealth v. Steadman*, 411 S.W.3d 717, 721 (Ky. 2013) (internal quotation marks and citations omitted). However, we conclude the trial court had subject matter jurisdiction at all times.

Reyes urged our Supreme Court to enforce the plea agreement between himself and the Commonwealth, which necessarily entailed making the first indictment the operative one since Reyes had agreed to plead guilty pursuant to the charges in that indictment. Now, well over thirty years later, he has changed

-8-

positions entirely and argues the trial court lacked the jurisdiction to reinstate the first indictment. Arguably, Reyes is estopped from wholly reversing his litigation stance. *See, e.g.*, *Hisle v. Lexington-Fayette Urban Cnty. Gov't*, 258 S.W.3d 422, 434 (Ky. App. 2008) (discussing judicial estoppel and related principles which "can be applied to prohibit a party from taking inconsistent positions in judicial proceedings"). However, we need not definitively address the issue because it is otherwise plain that Reyes is not entitled to relief.

Generally, "[t]here is no procedural mechanism for a mere reinstatement of an indictment after a dismissal without prejudice. The prosecution must seek another indictment or warrant just as in any original prosecution. The order of dismissal, even though it is without prejudice, cannot simply be undone." *Kelly v. Commonwealth*, 554 S.W.3d 854, 859 (Ky. 2018). Therefore, we agree with Reyes to the very limited extent that it was likely procedurally improper for the trial court to summarily reinstate the first indictment.

However, precedent makes plain that the reinstatement of an indictment does not impact a court's subject matter jurisdiction, even if the reinstatement is improper. In *Kelly*, a trial court dismissed an indictment without prejudice due to a defendant's fugitive status and reinstated the indictment after the defendant was extradited to Kentucky. *Kelly*, 554 S.W.3d at 857. After being convicted of most of the charges in the reinstated indictment, the defendant

contended the reinstatement was improper because the trial court had lost jurisdiction over the charges ten days after dismissing them. *Id.* at 858. Our Supreme Court agreed the reinstatement was improper. *Id.* at 859.

Though the cases are not identical, there are many similarities between this case and *Kelly*. Indeed, our review of the record shows that in his April 2023 motion to supplement his CR 60.02 motion, Reyes opined that his case and *Kelly* had "eerily similar" facts.

However, in *Kelly* our Supreme Court explained that the trial court had lost particular-case jurisdiction, not subject matter jurisdiction, over the indictment ten days after dismissing it. Specifically, in language directly relevant here, the Court meticulously explained as follows why the reinstatement of an indictment involved only particular-case jurisdiction, which may be waived, and not subject matter jurisdiction, which may not:

> "Whether a court has subject-matter jurisdiction is determined at the beginning of a case, based on the type of case presented." *Commonwealth v. Steadman*, 411 S.W.3d 717, 722 (Ky. 2013). "[A] court will retain jurisdiction over such a case so long as jurisdiction was proper in the first place." *Id.* "Indeed, once a court has acquired jurisdiction, no subsequent error or irregularity will remove that jurisdiction, so that a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law, or both." *Commonwealth v. Adkins*, 29 S.W.3d 793, 795 (Ky. 2000). "Once filed, a court has subject matter jurisdiction of the case so long as the pleadings reveal that it is the kind of case assigned to that court by a statute or constitutional provision."

-10-

*Daugherty v. Telek*, 366 S.W.3d 463, 467 (Ky. 2012). "A court, once vested with subject matter jurisdiction over a case, does not suddenly lose subject matter jurisdiction by misconstruing or erroneously overlooking a statute or rule governing the litigation." *Id.*

However, the notion of subject-matter jurisdiction is separate and distinct from particular-case jurisdiction. "Subject matter jurisdiction refers to a court's authority to determine this kind of case (as opposed to this case)." *Commonwealth v. Griffin*, 942 S.W.2d 289, 290-91 (Ky. 1997). Particular-case jurisdiction "refers to a court's authority to determine a specific case (as opposed to the class of cases of which the court has subject matter jurisdiction)." *Steadman*, 411 S.W.3d at 722. This Court has specifically held that "[a] court's power to affect its own judgment within ten days of entry or after the filing of a notice of appeal is . . . jurisdiction over a particular case. Such questions go more accurately to the propriety of the exercise of jurisdiction rather than to the *existence* of jurisdiction." *Steadman*, 411 S.W.3d at 722-23.

Felony prosecutions are squarely within the subject-matter jurisdiction of the circuit courts and there is no claim that this particular case originally failed in some way to trigger that jurisdiction. Thus, the case was properly before the circuit court at the inception of the case. Subject-matter jurisdiction was invoked properly. Therefore, any loss or issue arising from procedural defects instead refers to the trial court's particular-case jurisdiction over Kelly's case specifically. Particular-case "jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts, such as that an action was begun before a limitations period expired." *Id.* at 724.

As in *Steadman*, the trial court would have lost particular-case jurisdiction over Kelly's case if the indictment was dismissed. The order was entered months before Kelly was brought back before the court.

-11-

However, unlike subject-matter jurisdiction, particular-case jurisdiction is subject to waiver. *Steadman*, 411 S.W.3d at 724. Errors in particular-case jurisdiction "are allegations of pure legal error and not of a failure of the court's power to act at all. And *particular-case* jurisdiction is subject to waiver." *Id.* (emphasis original).

On October 2, 2015, Kelly was brought before the trial court on arraignment. He was appointed a public defender. The Commonwealth stated that the case had been dismissed due to Kelly's fugitive status, and "move[d] to reinstate" the indictment. The trial court sustained the motion. Defense counsel *did not* object nor raise any potential issues with this reinstatement. Additionally, Kelly did not raise the jurisdictional issue until appeal.

Kelly waived any issue relating to particular-case jurisdiction. This is not to say that the trial court did not err. Reinstatement of an indictment is not the proper procedure. Had Kelly brought this issue to the trial court's attention . . . Kelly would have been entitled to dismissal. The prosecution would have been forced to re-indict Kelly. However, this Court will not allow Kelly to ignore an issue, fail to bring the situation to light until *after* a conviction, and then succeed in obtaining a *dismissal* of his case on a purely procedural technicality. This issue was one of particular-case jurisdiction. Kelly, through his silence, effectively waived any potential error as to particular-case jurisdiction. The trial court retained proper subject-matter jurisdiction over the case as a felony in that county.

*Kelly*, 554 S.W.3d at 860-61 (some internal quotation marks and citations omitted) (emphasis and brackets in *Kelly*).

Since it is plain that the trial court here had subject matter jurisdiction over felony criminal charges resulting from alleged acts which occurred in

-12-

Christian County, *Kelly* makes plain that the reinstatement of the dismissed indictment did not deprive the trial court of subject matter jurisdiction. Instead, at most, the trial court lost particular-case jurisdiction over the first indictment ten days after dismissing it.

Though he – tellingly – does not mention it in his briefs, Reyes recognized that only particular-case jurisdiction was at issue in the reinstatement when he wrote in his April 2023 motion to supplement his CR 60.02 motion: "The issue now presented is one of jurisdiction. However, the Defendant does not attack the Court's subject matter jurisdiction, but rather particular-case jurisdiction."

Unlike subject matter jurisdiction, a lack of particular-case jurisdiction may be waived. *Kelly*, 554 S.W.3d at 861. And Reyes has waived any potential lack of particular-case jurisdiction by the trial court over the charges in the reinstated indictment. Reyes has not pointed to anywhere in the record where he timely argued that the reinstatement was improper. Instead, Reyes was in favor of that procedural mechanism at the time it occurred. We "will not allow [Reyes] to ignore an issue, fail to bring the situation to light until *after* a conviction, and then succeed in obtaining a *dismissal* of his case on a purely procedural technicality." *Kelly*, 554 S.W.3d at 861. Because Reyes has waived any lack of particular-case jurisdiction stemming from the reinstatement, the trial court did not abuse its discretion by denying Reyes's CR 60.02 motion.

For the foregoing reasons, the Christian Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Yorig R. Reyes, *pro se*
West Liberty, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky