DIXON, JUDGE:
Trenton Adams appeals from an order of the Pulaski Circuit Court ordering him to pay restitution of $100,000 to Charlotte Bullock. We affirm.
Adams, while intoxicated, caused a head-on collision that seriously injured Bullock. On December 6, 2016, Adams pled guilty to amended charges of second-degree assault and wanton endangerment. At Bullock's request the Commonwealth agreed to pre-trial diversion on both charges. In its diversion order, the court imposed numerous conditions, including payment of an unspecified amount of restitution, and diverted Adams's fifteen-year sentence for a period of five years. During the sentencing hearing, the court inquired as to the amount of restitution. The Commonwealth advised that Bullock had medical expenses that would likely be covered by a settlement with Adams's motor vehicle insurance company, however, the case had not yet settled. The court stated it would not include a specific restitution figure in the diversion order but noted the Commonwealth could file a motion for restitution within ten days.
On March 23, 2017, the Commonwealth requested a hearing date to establish restitution, noting Bullock stated she had to repay Medicare $50,000. The restitution hearing was held April 21. Bullock, a retired school teacher, testified her medical bills totaled nearly $1,000,000, and Medicare sued her to recover $150,000. Bullock stated her out-of-pocket cost was $50,000, which she paid to settle the Medicare claim. Bullock entered a settlement agreement with Adams's insurance company for $300,000, and she also received $100,000 in underinsured motorist coverage from her own policy. On cross-examination, Bullock acknowledged signing a document releasing Adams from further liability when she accepted the settlement from his insurance company. On re-direct, Bullock testified that, before the collision, she had worked as a substitute teacher and tutor. Bullock estimated her income from those jobs had been between $5,000 and $10,000 per year, and she noted she did not think she could return to work due to her injuries.
The trial court issued a written order concluding the civil settlement and release of liability did not preclude the imposition of criminal restitution. The court, citing Bullock's testimony she incurred $1,000,000 in medical expenses, ordered Adams to pay $100,000 in restitution to Bullock. This appeal followed.
Adams raises five claims of error on appeal; however, he has failed to provide any references to the record to show where four of the alleged errors were preserved for appellate review.[1] CR 2 76.12(4)(c)(v) requires:
[a]n "ARGUMENT" conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.
This rule ensures
that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the *882 case of an unpreserved error, whether palpable error review is being requested and may be granted.
Oakley v. Oakley , 391 S.W.3d 377, 380 (Ky. App. 2012).
The record in this case is minimal, and our review indicates Adams failed to properly preserve four of the errors alleged on appeal. Notably, Adams did not request palpable error review for three of these errors.[3] "Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." Shepherd v. Commonwealth , 251 S.W.3d 309, 316 (Ky. 2008). Consequently, as Adams has not requested palpable error review, we decline to address these three issues.
Of Adams's two remaining issues, only one was preserved; he requests palpable error review for the other. In the sole issue preserved, Adams contends the release of liability in the civil case precluded an award of criminal restitution. We disagree.
In Commonwealth v. Bailey , 721 S.W.2d 706, 707 (Ky. 1986), the court explained that the purpose of restitution is not an "additional punishment exacted by the criminal justice system.... It is merely a system designed to restore property or the value thereof to the victim." KRS 532.032 and KRS 532.033 vest the trial court with the authority to establish and enforce an order of restitution. KRS 533.030(3) provides, in relevant part:
When imposing a sentence of probation or conditional discharge in a case where a victim of a crime has suffered ... actual medical expenses, direct out-of-pocket losses, or loss of earning as a direct result of the crime ... the court shall order the defendant to make restitution in addition to any other penalty provided for the commission of the offense. ... Restitution shall be ordered in the full amount of the damages, unless the damages exceed one hundred thousand dollars ($100,000)....
More specifically, KRS 533.030(3)(d) provides that an order of criminal restitution does not prevent a victim from seeking civil damages from a defendant; however, the statute states that "[a] civil verdict shall be reduced by the amount paid under the criminal restitution order." In Clayborn v. Commonwealth , 701 S.W.2d 413, 414 (Ky. App. 1985), this Court addressed the statute's application to restitution and the victim's receipt of Workers' Compensation benefits for the injuries sustained in a criminal assault. The Court explained:
The statute limits restitution to the victim's actual out-of-pocket expenses which are paid by the victim, the Department for Human Resources, the crime victim compensation board or other governmental entity. In this case, Motors Insurance Company paid the victim $22,000 for impaired earnings and medical expenses. If the victim's actual out-of-pocket losses exceeded $22,000 then he is entitled to restitution under KRS 533.030(3) for the excess. However, if the victim's injuries were fully compensated by the $22,000 insurance payment, then he is not entitled to restitution.
Id. at 415.
Herein, Bullock testified her medical bills were nearly $1,000,000, and she also *883 asserted an out-of-pocket expense repaying Medicare $50,000 to settle its claim for reimbursement. Bullock acknowledged her $400,000 insurance settlement and testified she received approximately $260,000 after attorney's fees. This evidence alone is sufficient proof to establish Bullock is entitled to $100,000 in restitution here. Bullock received the policy limit of $300,000 from Adams's insurer and $100,000 from Bullock's insurer in underinsured motorist coverage. Since Bullock was required to pay her own attorney one-third from these proceeds, her attorney took at least $100,000 from her settlement. This amount would have only been paid to her by the insurance companies for damages actually resulting from the head-on collision with Adams. Therefore, the restitution amount ordered to be paid by Adams will repay Bullock $100,000 in funds to which she would have been legally entitled but for the necessity she pay her own attorney's fees out of her settlement. Consequently, the trial court's restitution order is proper.
As to the issue for which Adams seeks palpable error review, he contends the Commonwealth breached the plea agreement by filing a belated motion to establish restitution. We disagree. A review of the proceeds in the trial court reveals Adams clearly acquiesced to the trial court's exercise of particular-case jurisdiction and waived any alleged error.
In Commonwealth v. Steadman , 411 S.W.3d 717, 724 (Ky. 2013), the Court noted particular-case jurisdiction is at issue when a trial court enters a restitution order more than ten days post-judgment. As such, particular-case jurisdiction is subject to waiver by the defendant. Id. at 724-25. The Court concluded waiver occurs:
where a defendant effectively consents to the trial court's holding the restitution hearing after entry of the final judgment or otherwise fails to object and raise the "jurisdictional" question to the trial court.
Id. at 725.
Here, Adams unquestionably acquiesced in the trial court's exercise of particular-case jurisdiction to enter the belated restitution order. The record reveals Adams at no time objected to the trial court's jurisdiction during any of the proceedings herein, probably due, in large part, to the fact he was receiving diversion rather than a prison sentence. Consequently, Adams waived the alleged error, and thus there was no palpable error.
For the reasons stated herein, we affirm the restitution order entered by the Pulaski Circuit Court.
SMALLWOOD, JUDGE, CONCURS.
KRAMER, JUDGE, CONCURS AND FILES SEPARATE OPINION.
I concur with the result of the majority's opinion. However, on the issue of timeliness of the Commonwealth's motion for restitution, I do question whether there was a final order given that restitution was not initially addressed in the circuit court's order. See, e.g. , Dillard v. Commonwealth , 475 S.W.3d 594 (Ky. 2015).

He concedes his fifth claim of error was not preserved and requests palpable error review.

"A palpable error which affects the substantial rights of a party may be considered ... on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr 10.26. To establish manifest injustice, "the required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." Martin v. Commonwealth , 207 S.W.3d 1, 3 (Ky. 2006).