# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 27, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0476-MR

JEREMIAH WOLFORK                                                 APPELLANT

|  |  |  |
|---|---|---|
| V. | ON APPEAL FROM JEFFERSON CIRCUIT COURT<br>HONORABLE ANN BAILEY SMITH, JUDGE<br>NOS. 19-CR-1838 & 19-CR-2283 |  |

COMMONWEALTH OF KENTUCKY                                APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Jeremiah Wolfork pled guilty to possession of a handgun by a convicted felon, tampering with physical evidence and escape in the second degree. He received a sentence, through a negotiated plea agreement, of ten years. Wolfork also pled guilty to manslaughter in the first-degree, possession of a handgun by a convicted felon, wanton endangerment in the first degree, and being a persistent felony offender in the second degree. After entering his plea, but prior to his sentencing, Wolfork was released to a Home Incarceration Program (HIP). He then immediately cut his ankle monitor and escaped from supervision. Upon recapture, Wolfork was brought before the trial court and sought to vacate his plea. After holding a hearing, the trial court imposed the sentence as previously agreed by Wolfork, for a total of thirty years. Wolfork

appealed to this Court as a matter of right,[1] but upon review, we find no error, and hereby affirm the judgment of the Jefferson Circuit Court.

## I. FACTS AND PROCEDURAL HISTORY

Wolfork was indicted by a Jefferson County grand jury on July 3, 2019, for possession of a handgun by a convicted felon, tampering with physical evidence, criminal trespass in the third degree, and escape in the second degree.[2] These charges stemmed, with the exception of the escape charge, from a police response to gunshots that were fired on May 1, 2019. The escape occurred after Wolfork was initially charged and captured after he absconded from custody on the 27th of May. While Wolfork was on the run, he was indicted for murder, robbery in the first degree, possession of a handgun and firearm by a convicted felon, wanton endangerment in the first degree, and being a persistent felon in the second degree.[3] These latter charges stemmed from events which occurred on July 11, 2019.

Wolfork was initially represented by Andrew daMota.[4] On February 12, 2020, daMota filed a motion to suppress evidence in the first case. In the second case, on the 25th of March, he filed a motion to dismiss under KRS 503.085[5] wherein daMota asserted Wolfork was immune from prosecution because he acted in self-defense. After filing these motions but before they

---

[1] Ky. Const. § 110(2)(b).
[2] Indictment No. 19-CR-001838
[3] Indictment No. 19-CR-002283
[4] daMota spells his last name as shown, with a lower case "d."
[5] Kentucky Revised Statutes: "Justification and criminal and civil immunity for use of permitted force."

were heard, daMota was replaced as counsel by Kevin Coleman who entered his appearance on July 2, 2020.

Wolfork entered a plea to resolve both cases on August 19, 2020. During this hearing the trial court placed Wolfork under oath and conducted a plea colloquy. The court asked Wolfork if he had enough time to discuss the case with Coleman, whether he was satisfied with Coleman's performance, whether Wolfork needed more time with his attorney, and whether he had any complaints about Coleman. Wolfork stated he completed the 11th grade in high school and could read, write and understand the English language and understood the terms of the plea agreement. Wolfork also stated that he knew, by accepting this plea agreement, he was waiving his right to a jury trial. The trial court accepted the plea agreement and released Wolfork on HIP pending his final sentencing which was scheduled for September 9, 2020.

After he was released, less than twenty-four hours later, Wolfork removed his ankle monitor, did not comply with HIP, and failed to appear for his final sentencing. A warrant was issued on the 21st of August and Wolfork was rearrested on September 17, 2020. Wolfork sought to withdraw his plea. Clay Kennedy was appointed to represent him as conflict counsel. Kennedy filed a motion on Wolfork's behalf alleging Coleman misled Wolfork and provided ineffective assistance of counsel rendering Wolfork's entry of a guilty plea involuntary. On May 11, 2021, the trial court held a hearing on the issue where Wolfork and Coleman testified. The Commonwealth also introduced a number of phone call recordings the jail had from Wolfork's account.

3

At the hearing, Wolfork related that he had regular contact with daMota during his representation and had extensive discussions with him about his cases. Wolfork also testified that daMota told him that immunity motions were very difficult to win. But during Coleman's represention, Wolfork claimed to only have met him twice. During the first meeting Wolfork claimed that Coleman advised that his two pending motions had been overruled and that his current charges were eligible for the death penalty. Wolfork insists that Coleman never discussed any potential defenses, including the concept of imperfect self-defense. On cross-examination, the Commonwealth elicited from Wolfork that he was aware there had been no hearing yet on the issue of immunity and the idea of HIP was Wolfork's. Wolfork stated that while he had understood the trial court's questions during the plea colloquy, he only answered yes to many of the questions because Coleman told him to. At this hearing Wolfork insisted that he only reached the eighth-grade level of education while at the previous hearing he told the court he reached the eleventh grade. When the trial court asked Wolfork if he lied at the earlier hearing when he testified that he was satisfied with Coleman's representation and had no complaints, he responded that he "must of did."

Coleman testified to the following version of events, which differ greatly from Wolfork's. Coleman visited Wolfork at the jail four times prior to his entry of a plea. On July 6, he introduced himself to Wolfork as his new attorney and requested permission from Wolfork to seek a continuance in the upcoming

4

hearing regarding justification.[6] According to Wolfork, Coleman told him during this meeting that this motion had been overruled. Coleman, however, denied this. Instead, Coleman insists that Wolfork gave him permission to seek a continuance at this initial meeting.

Coleman again visited Wolfork on July 24, 2020, when he made Wolfork aware of a plea offer by the Commonwealth. Coleman discussed the initial offer from the Commonwealth, which was to dismiss the robbery and amend the murder to manslaughter in the second degree for a total of thirty years on both cases with twenty percent parole eligibility. During this meeting Coleman discussed the concept of imperfect self-defense, though Coleman conceded he did not get into much detail. Instead, he opined to Wolfork that the offer seemed fair considering the facts of the case. During this meeting, Coleman also discussed the full range of penalties including the possibility of aggravated penalties, i.e., the death penalty and life without parole.

On the 7th of August, Coleman met with Wolfork at the jail to discuss the offer further. Wolfork was agreeable to this offer but wanted to request HIP, and by way of inducement to the Commonwealth, proposed a reverse hammer-clause wherein he would plead guilty to manslaughter in the first degree but, should he fully comply with HIP, the manslaughter in the first degree would be amended to manslaughter in the second degree at his final sentencing.[7]

---

[6] This hearing was scheduled for the 10th of July.

[7] Manslaughter in the first degree is classified as a violent offense and has a parole eligibility of eighty-five percent while manslaughter in the second degree carries a parole eligibility of twenty percent and is classified as a non-violent offense.

Coleman also stressed that there was a potential ambiguity in the law regarding parole eligibility regarding a blended sentence that is composed of offenses classified as violent and non-violent.[8] After this meeting Coleman conveyed to the Commonwealth that Wolfork would accept the offer. Coleman again met Wolfork at the jail on August 11, 2020, to sign the plea agreement. Coleman also testified that he specifically asked Wolfork if he was comfortable going forward with the plea despite Coleman's short tenure as his attorney. Wolfork told him that he was comfortable going forward to enter his plea because he had discussed his case extensively with his previous attorney daMota.

Aside from Wolfork's and Coleman's testimony, the Commonwealth also played recordings of jail phone calls originating from Wolfork's account.[9] On an August 14, 2020, phone call Wolfork is heard discussing his plea agreement and that he would receive home incarceration with a hammer clause, "but I got my withdrawal papers to where if I won't come back, whenever I get caught or whatever, you feel me, I can withdraw the plea . . . . I ain't no dummy, you know I know this sh*t." Later, he tells the unknown woman he is speaking with to go to the library and get a fake lease and fill it out, presumably to be eligible for the HIP program. Later, a person other than Wolfork, but calling from his account, is heard telling someone that he needed a big favor, "He needs a lease.

---

[8] During Coleman's testimony he recounted how he specifically discussed with Wolfork our decision in *Kentucky Department of Corrections v. Dixon*, 572 S.W.3d 46 (Ky. 2019).

[9] Wolfork does not mention these phone calls at all in his brief.

They gave him HIP; he got nowhere to go, right. But he's not even trying to go, like, as soon as he walks out the door it's off, he's gone. As soon as he walks out of there, he's ripping it off, you know . . . . He just needs to get out of the building." Wolfork's response to these calls, at the hearing, was to say that he was not released on HIP with a fake lease, rather he was released to a woman's address who owned a home. He did admit the first call was his voice but offered by way of explanation that he only talked with the unknown woman about fake leases because he was cheating with her on the other woman whose address he was released to.

The trial court denied the motion and ruled Wolfork's plea was voluntarily entered and sentenced him according to the terms of the plea agreement. This appeal followed. We now address the merits of the appeal. Further facts will be adduced as needed below.

## II. ANALYSIS

Wolfork argues here that the trial court should have allowed him to withdraw his guilty plea because he contends that Coleman provided ineffective assistance of counsel during the course of his representation and thereby rendered his plea involuntary. This issue is preserved.

The Due Process Clause of the Fourteenth Amendment requires that a trial court make a showing that a guilty plea be entered intelligently and voluntarily. *Edmonds v. Commonwealth,* 189 S.W.3d 558, 565 (Ky. 2006) (citing *Boykin v. Alabama,* 395 U.S. 238, 241–42 (1969)). RCr[10] 8.10 states "[a]t any

---

[10] Kentucky Rules of Criminal Procedure

time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." A decision whether or not to grant a defendant's motion to withdraw a voluntarily entered guilty plea is within the sound discretion of the trial court. *Rigdon v. Commonwealth,* 144 S.W.3d 283, 288 (Ky. App. 2004). However, this Court has held that "the discretion to deny a motion to withdraw a guilty plea exists only after a determination has been made that the plea was *voluntary.* If the plea was *involuntary,* the motion to withdraw it must be granted." *Rodriguez v. Commonwealth,* 87 S.W.3d 8, 10 (Ky. 2002). A trial court's factual finding on the voluntariness of the plea will be reviewed for clear error while its determinations of law will be reviewed *de novo. Commonwealth v Pridham,* 394 S.W.3d 867, 875 (Ky. 2012).

A defendant claiming ineffective assistance of counsel must show his counsel's performance was deficient and this deficiency caused prejudice. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). Defendants must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. To establish prejudice in a guilty plea a defendant has to show that but for the errors of counsel, the defendant would have insisted on proceeding to trial and would not have entered a guilty plea. *Pridham,* 394 S.W.3d at 876.

Wolfork contends that Coleman's representation of him was deficient under the *Strickland* standard because Coleman only had the case for a limited

8

period of time prior to Wolfork's entry of a plea and did not sufficiently discuss any potential defenses with him.[11] As noted above, Wolfork claimed Coleman only visited him in jail twice and claimed at the hearing that Coleman lied to him when he indicated that the motions pending before the trial court had been denied. But Coleman denied telling Wolfork this and testified that during his first meeting with Wolfork he asked for his permission to seek a continuance to which Wolfork agreed.

Wolfork also claims that Coleman did not adequately discuss any defenses available at trial, for example, the concept of imperfect self-defense. While Coleman did testify that he, admittedly, had a brief discussion about imperfect self-defense, but he doubted that he discussed it in depth with Wolfork. We cannot say this brief discussion fell outside the range of acceptable performance of counsel as contemplated by the Sixth Amendment. Because the plea bargain, as agreed to by the parties, accomplished what Wolfork would have hoped to achieve at trial had the jury agreed the circumstances of the case merited a verdict reflecting imperfect self-defense.[12] Besides, as the name implies, imperfect self-defense is not a complete defense, so its not at all certain, that had Wolfork had a greater understanding of

---

[11] Wolfork did not argue in his motion to the trial court to set aside his guilty plea that Coleman had failed to sufficiently investigate his case. As such, the issue went unaddressed during the hearing and the subsequent order from the trial court. Since he is only now asserting this issue, we will not discuss it. *Commonwealth v. Steadman,* 411 S.W.3d 717, 724 (Ky. 2013).

[12] See *Commonwealth v. Hager,* for an extended discussion of imperfect self-defense. 41 S.W.3d 828, 841-842 (Ky. 2001).

imperfect self-defense, he would have insisted on going to trial. Rather, Wolfork likely would have chosen to do what he actually did, which was to enter his plea according to the terms as offered. It also is worth noting that Wolfork could have received twenty years just on the possession of a handgun by a convicted felon as enhanced by the persistent felony offender in the second-degree charge.[13]

Wolfork also complains that Coleman, when he told Wolfork his motions had been denied, told him that he could get the death penalty even though the Commonwealth had not filed a notice of its intention to seek aggravated penalties. Wolfork strongly implies he only acceded to the plea agreement because Coleman wrongly asserted that the death penalty was on the table. Coleman addressed this during his testimony and told the court that he considers it his duty to inform his clients that whenever they are charged with murder as well as an eligible aggravator, he informs them of the full range of penalties possible by statute, including the death penalty. He does so, he explained, even if the Commonwealth has not filed a notice seeking aggravated penalties because, he reasoned, it remains a possibility that a defendant should be aware of, even if it appears unlikely given the facts of a particular case.

---

[13] KRS 527.040(2)(b) states that a convicted felon found in possession of a handgun is a class C felony, and if enhanced by KRS 532.080(5), the persistent felony offender in the second degree statute, the sentencing range is ten to twenty years in prison.

The trial court found Wolfork lacked credibility. Based upon Wolfork's past performance and the contents of jailhouse telephone conversations, this Court cannot say the trial court was incorrect in that assessment. Aside from his admitted false statements during his plea colloquy, after reviewing the phone calls from the jail, it is clear Wolfork attempted to swindle the trial court. Wolfork negotiated a plea agreement in bad faith knowing that he would escape from home incarceration, and should he get caught, seek to withdraw his plea. The trial court, in its order stated:

> He testified that he lied under oath at the time of his guilty plea when he told the Court that he was satisfied with Mr. Coleman's representation and that his acknowledgement of guilt was likewise a lie; he testified he only made these statements so he could get out of jail. This Court can only conclude that this Defendant says, even under oath, what he believes he needs to say to get what he wants. In this instance he testifies that his attorney lied to him about the status of pending motions so that he can claim that his guilty plea was involuntarily made; this then is his lifeline to save him from what he believes to be a bad outcome to his case. Of course, his jail telephone call sinks him in this regard as he admits, even before entering his guilty plea, that he intends to withdraw his plea should he get "caught."

Because of this the trial court found Wolfork's plea was knowingly, voluntarily, and intelligently made. We find the trial court was correct regarding the circumstances regarding Wolfork's plea and its findings are not clearly erroneous.

### III. CONCLUSION

Based on the foregoing, we find no error and hereby affirm the judgment of the Jefferson Circuit Court that Wolfork had reasonably competent

11

representation when entering his plea. Thus, his plea was intelligently, knowingly, and voluntarily entered and will not be set aside.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General

Stephanie L. McKeehan
Assistant Attorney General