COMMONWEALTH of KENTUCKY,
Appellant/Cross–Appellee

v.

James W. STEADMAN, Appellee/Cross–
Appellant.

Nos. 2010–SC–000326–DG,
2011–SC–000508–DG.

Supreme Court of Kentucky.

Oct. 24, 2013.

Jack Conway, Attorney General, Todd Dryden Ferguson, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, for appellant/cross-appellee.

Kyle Anthony Burden, Otisco, IN, for appellee/cross-appellant.

Opinion of the Court by Justice NOBLE.

This case presents two questions. First, is a trial court without general subject-matter jurisdiction, or otherwise without power, to order restitution after entering a final judgment sentencing the defendant to imprisonment, even though the defendant consented to a restitution hearing being held after the sentencing date and otherwise failed to object? The answer is no.

Second, is a CR 59.05 motion to amend, alter, or vacate an order timely filed thirteen days after the challenged order is entered where there is no evidence about when the motion was mailed? The answer is no.

## I. Background

In 2005, Steadman was indicted in Logan County for theft by deception over $300 and being a second-degree persistent felony offender.[1] He represented himself at trial, albeit with stand-by counsel.[2] On May 4, 2007, he was convicted on both charges, and the jury recommended an eight-year sentence.

On May 16, 2007, the Commonwealth filed notice that it would seek restitution at the final sentencing, which was to be held the next day. At the sentencing hearing, the trial court stated that it would order restitution and, indeed, was required by law to do so. After hearing argument from both sides disputing the proper amount of restitution, the trial court stated that a hearing with testimony would be

---

1. Steadman had originally been indicted on the theft charge alone in 2000. Presumably, the 2005 indictment was a superseding indictment.

2. In fact, Steadman has carried on much of the litigation in this case himself, at least at the trial level. Unless otherwise noted, the various trial pleadings discussed in this opinion were filed by Steadman acting *pro se.*

necessary, to which Steadman's lawyer stated, "Yes, your honor." Neither Steadman nor his lawyer objected to this. In fact, Steadman's lawyer specifically asked that the hearing not be set on a Thursday.

By separate order handwritten on the docket sheet and entered by the clerk on May 17, the court set a restitution hearing for June 8. Also on May 17, the court signed its final judgment sentencing Steadman to imprisonment for eight years. The judgment, however, was not entered by the clerk until twelve days later, on May 29.

The day the final judgment was entered, Steadman's counsel tendered a notice of appeal. The notice, however, was not filed by the clerk until June 20.

In the interim, on June 8, the trial court held the restitution hearing. At the beginning of the hearing, Steadman's lawyer stated that her understanding was that it was a continuation of the previous hearing, presumably referring to the restitution discussion on the day of sentencing. At no time during the hearing did Steadman or his lawyer object to the court's jurisdiction or power to order restitution. And at the end of the hearing, the following exchange between Steadman's counsel and the court occurred:

Counsel: Will you be issuing a final order at this time on Mr. Steadman's case?

Court: Say that again?

Counsel: Will you be issuing a final judgment on this case at this time? I believe that was an outstanding issue.

Court: We are doing a final judgment—

Counsel: Yes, your honor.

Court:—with regard to the incarceration.

Counsel: Yes, your honor.

Court: And I will do a separate order on the restitution. I think the judgment on the, the final judgment of sentence and imprisonment has already been entered.

Counsel: Okay. People have told me differently. I just wanted to make sure we have that for appellate—

Court: That is already entered.

After that exchange, Steadman asked to raise issues related to his appeal. He complained that he "had no idea" that his lawyer had filed a notice of appeal (she stated that she told him she was going to), and that he had complaints about the record to be designated on appeal. Several minutes of discussion about the appellate record and getting the appeal moving followed.

The Commonwealth's Attorney then stated that he believed the notice of appeal he received was filed before the court's final judgment and that he thus did not believe the appeal had been "perfected." Steadman's counsel responded: "I don't think it is. I think there already was one. I remember Mr. [inaudible] talking about that." She made one other brief statement that is not audible on the record. At that time, Steadman stated he had prepared a notice of appeal and brought it to court as "insurance." The court took the notice and said it would order it filed in the record.

Later that day, the court signed an order for $11,350 in restitution, plus a 5% statutory fee. This order was entered on June 13. Steadman's handwritten notice of appeal was filed by the clerk on June 20.[3]

In April 2008, while the appeal was pending, Steadman moved the trial court

---

**3.** In August 2007, the Court of Appeals dismissed as duplicative the second appeal that began when Steadman filed his own notice of appeal.

to vacate the restitution order under CR 60.02. He argued that the order had been based on perjured testimony and that he had not been given due process.

In August 2008, he moved the court to vacate his conviction and the restitution order, again under CR 60.02. Among other things, he argued that the Commonwealth had failed to turn over exculpatory material from a separate prosecution of Steadman in nearby Barren County.

This material came to Steadman's attention in an April 2008 letter from the special prosecutor in the Barren County case to the special judge in the Barren County case. A copy of the letter was sent to Steadman. It described a "large box" with over 200 financial, legal, and medical documents. The letter stated that the special prosecutor was "concerned that there are some important documents pertaining to Mr. Steadman's pending criminal and civil cases," and that "there could be some exculpatory evidence."

Steadman claimed in his motion that this was the material he had been trying to obtain for years and which the original prosecutors in both his Barren and Logan County cases had continually denied existed. He also argued that the Barren County case had been dismissed because the regular Commonwealth's Attorney had withheld exculpatory evidence. The letter from the special prosecutor stated that the information in the large box had just recently been received in his office from the Barren County Commonwealth's Attorney the week before, and that he did not know how the material came to be in the Barren County Commonwealth's Attorney's possession or how long it had been there.

On July 21, 2008, the trial court denied both motions. The court found no proof of perjury or fraud leading to the restitution order, and no due process violation. The court also noted that Steadman had failed to include a copy of the special prosecutor's letter with his motion to vacate his conviction. Without that support, the trial court stated, the "motion read more like a convoluted fictional crime novel than a motion to vacate his judgment and sentence." The court concluded that "without some evidence of the existence of a 'large box' of exculpatory evidence recently discovered or a letter from a prosecutor acknowledging such evidence, the Defendant's claims are without merit." This order was entered on July 22.

Thirteen days later, on Monday, August 4, 2008, the Logan Circuit Clerk's office received a motion for reconsideration from Steadman. This time, Steadman included a copy of the special prosecutor's letter. In September 2008, the trial court denied this motion, stating that the letter at most acknowledged the possibility of exculpatory evidence, that it was unclear how the Barren County evidence was relevant to the Logan County case, and that Steadman had failed to show how the documents could have changed the result in his Logan County case. This order was entered on October 6, 2008.

On October 8, Steadman mailed motions for leave to proceed *in forma pauperis* and for appointment of counsel, which were filed on October 14. At the same time, he submitted a notice of appeal, but it was merely marked as tendered and not stamped as filed.

In November, these motions were denied; the order was entered on December 11.[4] On December 18, a copy of Stead-

---

4. The court also noted that Steadman was no longer incarcerated, knew of no reason that he could not have investigated the "large box," and that he had made no request to review its contents.

man's October-tendered notice of appeal was finally filed by the clerk. This appeal was consolidated with the direct appeal.

The Court of Appeals, which had been holding Steadman's direct appeal in abeyance pending the outcome of the CR 60.02 motions, then decided his appeal. The court affirmed his conviction and sentence, but vacated the restitution order, holding that the trial court had been without subject-matter jurisdiction at the time because more than ten days had elapsed since entry of the final judgment. The court also dismissed the appeal of the CR 60.02 order, holding that the September notice of appeal had been untimely because the motion for reconsideration had been untimely, having been filed more than ten days after the denial of the CR 60.02 motions. The order denying the motion for reconsideration was a nullity, the court held, and the time for appeal had actually been from the original denial of CR 60.02 relief in July 2008.

The Commonwealth sought, and was granted, discretionary review of whether the trial court lost subject-matter jurisdiction to enter the restitution order ten days after entry of the final judgment sentencing Steadman to imprisonment. Steadman sought, and was granted, discretionary review of whether the appeal of the CR 60.02 decision was properly dismissed as untimely.

## II.  Analysis

**A.  The Logan Circuit Court had subject-matter jurisdiction over restitution, and any other claims regarding restitution were waived.**

The first question is whether a circuit court retains subject-matter jurisdiction to order restitution after entering a final judgment sentencing a defendant to imprisonment. This issue was raised for the first time on Steadman's appeal.

■  Nevertheless, an alleged lack of subject-matter jurisdiction is one of those issues that "may be raised at any time, even by the court itself." *Kentucky Employers Mut. Ins. v. Coleman*, 236 S.W.3d 9, 15 (Ky.2007). It "cannot be consented to, agreed to, or waived by the parties." *Gaither v. Commonwealth*, 963 S.W.2d 621, 622 (Ky.1997). Steadman, of course, argues that the trial court's subject-matter jurisdiction disappeared ten days after entry of the judgment; he also argues that his notice of appeal stripped the trial court of subject-matter jurisdiction and transferred it to the Court of Appeals. The Commonwealth argues that the Court of Appeals and Steadman have confused "the concept of general subject matter jurisdiction ... and more particular jurisdiction over a particular case." This Court concludes that the Commonwealth is correct.

Admittedly, this Court has said repeatedly in the past that a trial court *loses jurisdiction* of a case ten days after entry of a final order or judgment. *See, e.g., Commonwealth v. Marcum*, 873 S.W.2d 207, 211 (Ky.1994) ("[J]udgment became final once ten days had elapsed with no action taken to alter, amend or vacate it; and ... the court had *lost jurisdiction* over the case." (citation omitted)); *Silverburg v. Commonwealth*, 587 S.W.2d 241, 244 (Ky.1979) ("The court had lost jurisdiction of the case. . . ."). We have also stated that the filing of a notice of appeal divests the trial court of jurisdiction and "transfers jurisdiction of the case from the circuit court to the appellate court." *City of Devondale v. Stallings*, 795 S.W.2d 954, 957 (Ky.1990).

But these decisions repeatedly refer to jurisdiction of or over "the case." They do not say the court loses jurisdiction over the subject matter of the case, or a category or class of cases.

In fact, that claim does not make sense. Whether a court has subject-matter jurisdiction is determined at the beginning of a case, based on the type of case presented. General subject-matter jurisdiction should be determinable from the face of the charging document (the indictment) or other initial pleading (the complaint). Thus, a court "will retain jurisdiction over such a case so long as jurisdiction was proper in the first place." *Leonard v. Commonwealth,* 279 S.W.3d 151, 156 (Ky.2009); *see also Commonwealth v. Adkins,* 29 S.W.3d 793, 795 (Ky.2000) ("There is a presumption against divesting a court of its jurisdiction once it has properly attached, and any doubt is resolved in favor of retaining jurisdiction. Indeed, once a court has acquired jurisdiction, no subsequent error or irregularity will remove that jurisdiction, so that a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law, or both." (citations omitted)).

Or, as the Court of Appeals has aptly put it: "Once a court has acquired subject matter and personal jurisdiction, challenges to its subsequent rulings and judgment are questions incident to the exercise of jurisdiction rather than to the *existence* of jurisdiction." *Hisle v. Lexington–Fayette Urban County Government,* 258 S.W.3d 422, 429–30 (Ky.App.2008) (quoting *Buckalew v. Buckalew,* 754 N.E.2d 896, 898 (Ind.2001)); *see also id.* at 430 ("Once a court acquires fundamental jurisdiction of a case, any judgment that it renders in that case 'is not invalidated because of an [alleged] improper exercise of that jurisdiction.'" (quoting *Maryland Bd. of Nursing v. Nechay,* 347 Md. 396, 701 A.2d 405, 410 (1997) (alteration omitted))).

There is a significant difference between general subject-matter jurisdiction and jurisdiction over a particular case. General subject-matter jurisdiction "refers to a court's authority to determine 'this kind of case' (as opposed to 'this case')." *Commonwealth v. Griffin,* 942 S.W.2d 289, 290 (Ky.1997). This differs from "another type of jurisdiction, jurisdiction over a particular case, ... [which] refers to a court's authority to determine a specific case (as opposed to the class of cases of which the court has subject matter jurisdiction)." *Id.; see also Milby v. Wright,* 952 S.W.2d 202, 205 (Ky.1997) ("Finally there is jurisdiction over the particular case at issue, which refers to the authority and power of the court to decide a specific case, rather than the class of cases over which the court has subject-matter jurisdiction.").[5]

Unfortunately, this subject is rife with confusion: "Despite its preeminent place in the legal canon, the word 'jurisdiction' is more easily used than understood. This is because the term is too often used in a loose fashion, with the single word being used to describe several related but nevertheless very different concepts." *Nordike v. Nordike,* 231 S.W.3d 733, 737 (Ky.2007) (citations, quotation marks, and brackets omitted). "Jurisdiction over a particular case can perhaps be the most difficult of the jurisdictional ideas," *id.* at 738, largely because the cases frequently say there is "no jurisdiction" without stating what type of jurisdiction is at stake, particularly when addressing "particular-case jurisdiction," *id.*

A court's power to affect its own judgment within ten days of entry or after the filing of a notice of appeal is this latter category: jurisdiction over a particular case. Such questions go more accurately

---

**5.** There is a third type of jurisdiction: personal jurisdiction. *See Nordike v. Nordike,* 231 S.W.3d 733, 737–38 (Ky.2007). There is no question, however, that the trial court had personal jurisdiction over Steadman.

to the propriety of the exercise of jurisdiction rather than to the *existence* of jurisdiction. As noted above, the decisions describing a lack of jurisdiction under such circumstances limit it to "this case." That alone shows that we are talking not about limits on the court's power over an entire category of cases, but whether the court has exceeded its power with respect to *this* case.

Beyond that semantic point, however, lies the simple fact that there is no question that the circuit courts have general subject-matter jurisdiction over restitution in criminal cases that are properly before them in the first instance (i.e., felony cases). Subject-matter jurisdiction does not exist "where the court has not been given any power to do anything at all in such a case, as where a tribunal vested with civil competence attempts to convict a citizen of a crime." *Milby,* 952 S.W.2d at 205 (quoting *Duncan v. O'Nan,* 451 S.W.2d 626, 631 (Ky.1970)). But it is very clear that the circuit courts have been given the power to try felony prosecutions and to impose restitution.

The Kentucky Constitution outlines the subject-matter jurisdiction of the circuit courts: "The Circuit Court shall have original jurisdiction of all justiciable causes not vested in some other court." Ky. Const. § 112(5). This allows the General Assembly to alter the circuit court's subject-matter jurisdiction, as it has done in the case of misdemeanor-only prosecutions, which fall within the exclusive subject-matter jurisdiction of the district courts. *See* KRS 24A.020, 24A. 110.

That leaves felony prosecutions within the jurisdiction of the circuit court. And when a court has jurisdiction over a felony prosecution, it also has subject-matter jurisdiction over restitution related to the crime. *See* KRS 532.032 & KRS 431.200.

If the Logan Circuit Court had subject-matter jurisdiction over the felony and restitution (which it did), then the "jurisdiction" at issue must be some other type. Since it is clearly not personal jurisdiction, it must be jurisdiction over a particular case. This makes sense in light of our frequent holding that errors in the procedural invocation of a court's jurisdiction relate to particular-case jurisdiction, not general subject-matter jurisdiction:

> An apt example of this type of jurisdiction [particular-case] would be the instance of the filing of a notice of appeal in a civil case on the thirty-second day after the trial court entered judgment. The Court of Appeals has the authority to decide civil appeals in general, but lacks the power to adjudicate a case filed too late.

*Milby,* 952 S.W.2d 202, 205 (Ky.1997). This is because a procedural mechanism, like the filing of a notice of appeal, "is not a matter of jurisdiction, but only of procedure." *Johnson v. Smith,* 885 S.W.2d 944, 949–50 (Ky.1994).

While *Johnson* used the generic term "jurisdiction," it is clear that it meant *subject-matter* jurisdiction. In discussing the filing of a notice of appeal, for example, it stated: "Our rule does not create jurisdiction, but only prescribes the method by which the jurisdiction of an appellate court is invoked." *Id.* (quotation marks omitted); *see also id.* ("To be precise, losing litigants are constitutionally vested with a right of appeal and appellate courts are constitutionally vested with jurisdiction. Strictly speaking, the notice of appeal is not jurisdictional. It is a procedural device prescribed by the rules of the court by which a litigant may invoke the exercise of the inherent jurisdiction of the court as constitutionally delegated. This is why CR 73.02(2) describes automatic dismissal as the penalty for failure of a party to file

a timely notice of appeal, but not as a lack of jurisdiction.").

That these procedural rules are concerned with particular-case jurisdiction is also shown by the fact that they turn on particular facts, rather than whether the case fits within a statutorily or constitutionally defined category. "This kind of jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts, such as that an action was begun before a limitations period expired." *Nordike*, 231 S.W.3d at 738. The jurisdictional facts that would decide a particular-case jurisdictional question here are whether the trial court acted within ten days of entering its judgment, or whether Steadman had filed a notice of appeal.

■ Under the facts of this case, once they are accurately laid out, the trial court had lost jurisdiction of this case, but not subject-matter jurisdiction, when it entered the restitution order more than ten days after entering the final judgment imposing the sentence. But that does not mean that Steadman wins the jurisdictional fight in this particular case.

As noted above, Steadman complained about this issue for the first time on appeal. He never raised this issue with the trial court, and in fact all but consented to having the restitution hearing after his final sentencing. Moreover, he had ample opportunity to raise any jurisdictional issue, and even addressed some issues related to his appeal at the restitution hearing. Yet he and his counsel acted as though the trial court still had jurisdiction. Not only did his counsel indicate that the first notice of appeal may have been ineffective, but Steadman himself had ready and filed a notice of appeal at the end of the hearing.

■ Almost all issues are subject to waiver, whether from inaction or consent,

even in a criminal case, and "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky.1999); *see also Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky.2011) ("It has long been this Court's view that specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal."); *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky.2009) ("More importantly, this precise argument was never made in the trial court. An appellate court 'is without authority to review issues not raised in or decided by the trial court.'" (quoting *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky.1989))); *Combs v. Knott County Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859, 860 (1940) ("[A]ppellant is precluded from raising that question on appeal because it was not raised or relied upon in the court below. It is an unvarying rule that a question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court.").

■ The lone exception to this rule, of course, is when the question is whether the trial court had general *subject-matter* jurisdiction. As we have concluded, however, the questions Steadman has raised do not go to subject-matter jurisdiction and instead concern only whether the trial court had particular-case jurisdiction. Or, more precisely, as "challenges to [the trial court's] subsequent rulings and judgment," they "are questions incident to the exercise of jurisdiction rather than to the *existence* of jurisdiction." *Hisle*, 258 S.W.3d at 429–30 (quoting *Buckalew v. Buckalew*, 754 N.E.2d 896, 898 (Ind.2001)). In other words, they are allegations of pure legal error and not of a failure of the court's power to act at all. And *particular-case* jurisdiction is subject to waiver. *Griffin*,

942 S.W.2d at 291 ("[A] lack of jurisdiction of the particular case, as dependent upon the existence of particular facts, may be waived.") (quoting *Collins v. Duff*, 283 S.W.2d 179 (Ky.1955)). It is clear that Steadman waived particular-case jurisdiction here.

■ None of this is to say that the trial court engaged in best practices. Ideally, a trial court should delay entering a final judgment until it decides the restitution question so that matter could be included in the final judgment. (In fact, there was some question at the restitution hearing whether this needed to be done.) While restitution is not part of the punishment, *Commonwealth v. Bailey*, 721 S.W.2d 706, 707 (Ky.1986), it is nonetheless part of the *sentence, Jones v. Commonwealth*, 382 S.W.3d 22, 29 (Ky.2011).[6] And, thus "restitution is a proper component of a *judgment imposing a final sentence.*" *Id.* (emphasis added). But to date, this Court has not required that restitution be included in the same order of judgment imposing the punitive aspect of the sentence (i.e., a term of incarceration or a fine). Because there may be reasons to enter an order regarding part of a sentence before entering an order as to another part, such as here when there may be a need for a separate hearing on a matter such as restitution, we do not make this requirement today.

However, if a defendant does not make a clear waiver of the ten-day case jurisdiction rule, a court could lose jurisdiction over the case by doing so.

Additionally, our statutes provide specifically that restitution can be ordered separately from the final judgment of conviction and sentence. *See* KRS 431.200.[7] While KRS 431.200 is a different procedure than that laid out in KRS 532.032, since it requires the filing of a separate petition within 90 days of the final judgment, it nonetheless underscores that the trial court retains subject-matter jurisdiction over restitution after entry of the final judgment. This is not inconsistent with the ten-day rule, however, because as this Court pointed out in *Bailey*, 721 S.W.2d at 707, restitution under KRS 431.200 is in addition to the terms of a final sentence and must be pursued by a petition on behalf of the injured victim. Here, restitution was raised as part of the criminal sentence, and as such was subject to all the time limits that affect the sentence.

■ Our conclusion today is limited to facts like those presented in this case: where a defendant effectively consents to the trial court's holding the restitution hearing after entry of the final judgment or otherwise fails to object and raise the "jurisdictional" question to the trial court.

---

6. It is important to note that Steadman has not challenged the amount of restitution or whether he was given due process at the restitution hearing (though he has made a due process challenge, via his CR 60.02 motion, to his overall conviction), and thus *Jones v. Commonwealth*, 382 S.W.3d 22, 29 (Ky.2011), does not allow him to attack his restitution for the first time on appeal.

7. Our statutes also anticipate that in some instances, restitution can be ordered long after entry of the final judgment. Specifically, if a convicted defendant is paroled, restitution, if applicable, must be a condition of

parole. *See* KRS 532.032(4). But not all convicted defendants are paroled, and thus whether restitution is ordered as a condition of parole cannot be known at the time the final judgment is entered. Of course, in such instances, it should be the parole board, and not the trial court ordering the restitution. *See Parker v. Commonwealth*, 331 S.W.3d 634, 636 (Ky.App.2011) (holding that parole board has power under KRS 532.032(4) to order restitution as a condition of parole, even where trial court has not ordered restitution or where the trial court's order coming two years after entry of judgment was voided).

If the defendant objected at trial, the question would be live on appellate review.

But Steadman never objected and therefore waived this claim. He never gave the trial court an opportunity to resolve these issues. For that reason, the issue was dead and decided when the appeal began.[8] Because Steadman failed to raise this issue before the trial court, he is barred from pursuing it. Moreover, he has not framed a question of the trial court's general subject-matter jurisdiction. Thus, the Court of Appeals erred in vacating the order of restitution.

**B. Steadman's CR 59.05 motion was untimely and thus his appeal was untimely.**

■ Steadman's cross-appeal concerns whether his CR 59.05 motion was timely filed, which in turn would make his subsequent notice of appeal from the denial of that CR 59.05 motion timely. The Logan Circuit Court denied Steadman's CR 60.02 motions by an order entered July 22, 2008, which was a Tuesday. A CR 59.05 motion must be "served not later than 10 days after entry of the final judgment." That ten-day period expired on August 1, 2008, which was a Friday. Steadman's 59.05 motion was received and filed by the Logan Circuit Clerk on August 4, 2008, the following Monday.

Steadman first claims that he posted his motion no later than Friday, August 1, 2008, and that he therefore complied with the service-within-ten-days rule. As proof of this, he cites a Department of Corrections policy, which he claims establishes that there is no prison mail service on weekends or holiday. Since his motion was received on Monday and there was no mail service at his prison on Saturday, he argues, he must have posted his motion no later than Friday, making it timely under CR 5.02. The Commonwealth objects to this claim on two grounds: first, the CR 59.05 motion was undated; and second, the prison policy does not support Steadman's claim.

Steadman is correct that the timeliness of a GR 59.05 motion turns on when it is served,[9] and that "[s]ervice is complete upon mailing" under CR 5.02. He has not, however, adequately proven the time of mailing.

As the Commonwealth correctly notes, Steadman's motion was not dated. Indeed, the certificate of service included a place for a date that reads: "This ____ day of July 2008." The blank was never filled in. Under CR 5.03, proof of service "may be by certificate of a member of the bar of the court or by affidavit of the person who served the papers, or by any other proof satisfactory to the court." Even assuming that an un-notarized certificate by a non-lawyer is sufficient under this rule, by failing to fill in the date, Steadman essentially filed no certificate. He made no claim in the motion itself as to when he served it, and thus he has not proven his claim under CR 5.03.

The Corrections policy that Steadman relies on, Policy Number 16.2, also fails to prove timely service. The only reference in the policy to when prison mail service operates states: "Correspondence received

---

8. For an example of a defendant properly challenging a late restitution order at the trial court and succeeding in having it voided, see *Parker*, 331 S.W.3d at 635. Unfortunately for Parker, restitution was later ordered by the parole board as a condition of parole under KRS 532.032(4).

9. Timeliness under some other civil rules depends on the time of filing. *See, e.g.,* RCr 12.04(1) ("An appeal is taken by filing a notice of appeal in the trial court.") *But see* RCr 12.04(5) (applying the "mailbox rule" to appeals of incarcerated persons).

shall, if possible, be delivered to the inmate within twenty-four (24) hours of receipt during normal workdays, excluding weekends and holidays." Neither this language nor anything else in the policy states that the prison will not accept outgoing mail on weekends. While it may very well be the case that the prison does not, Steadman has failed to prove it. Yet he bears the burden to show proper service.

Alternatively, Steadman argues that under CR 6.05, he was entitled to three days in addition to the ten days allowed under CR 59.05 to accomplish service of his motion. To support this claim, he cites an unpublished Court of Appeals opinion, *Normile v. Wilson*, 2009–CA–000227–ME, 2009 WL 3047445, at *2 (Ky.App. Sept. 25, 2009), stating in dicta that CR 6.05 added three days to the CR 59.05 time frame.

▮ *Normile* and Steadman's argument, however, contradict both the language of CR 6.05 and long-established precedent. The rule states:

> Whenever a party has the right or is required to do some act or take some proceedings *within a prescribed period after the service of a notice* or other paper upon him and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period.

CR 6.05 (emphasis added). As this Court stated more than 30 years ago, "CR 6.05 applies only to periods measured from date of Service." *Arnett v. Kennard*, 580 S.W.2d 495, 496 (Ky.1979). But the CR 59.05 time period is not measured from the date of service; it is measured from the date of entry of the judgment or order. Thus, when asked whether CR 6.05 applies

to CR 59.05, the Court stated bluntly: "The answer is 'No.'" *Id.* The Court also noted that it had "consistently held that CR 59 motions served 13 days after entry of judgment are not timely." *Id.*

Steadman, through counsel on appeal, admits that *Arnett* is an established precedent of *this Court*, yet he goes on to chide the Court of Appeals for having relied on it instead of that court's own unpublished decision. He also claims that "it is clear that there is uncertainty as to the application of CR 6.05." Unfortunately, what is clear is that the *binding* precedent of this Commonwealth for more than 30 years has been that CR 6.05 does not extend the time limit in CR 59.05. That the Court of Appeals made an erroneous statement—in dicta [10]—does not change this, nor is this Court inclined to revisit its precedent.

Because Steadman's CR 59.05 motion was untimely, his time for appeal began to run from the date of entry of the order, July 22, meaning he had only until August 21, 2008. His notice of appeal was filed long after that, and thus was untimely. The Court of Appeals therefore properly dismissed that aspect of his appeal.

## III. Conclusion

Because the trial court has subject-matter jurisdiction over Steadman's case, which included the question of restitution, and Steadman waived any complaint about that issue by failing to raise it to the trial court, the Court of Appeals is reversed in part, and this matter is remanded for reinstatement of the trial court's restitution order.

Because Steadman's CR 59.05 motion was untimely filed, which made his notice

---

10. It was dicta because the Court of Appeals, despite concluding that Normile had an additional three days to file his motion, ultimately ruled that the motion was untimely filed. It reasoned that even though the motion was *filed* with the clerk in the prescribed time

period, because it was not *mailed*, and thus not served, on opposing counsel until after that time had elapsed, it was untimely. *Normile v. Wilson*, 2009–CA–000227–ME, 2009 WL 3047445, at *2 (Ky.App. Sept. 25, 2009).

of appeal of the trial court's CR 60.02 order untimely, the part of the Court of Appeals' decision dismissing that part of the appeal is affirmed.

All sitting. All concur.