RENDERED: DECEMBER 12, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1058-MR

MARK JOSHUA COLLINS      APPELLANT

v.      APPEAL FROM LETCHER CIRCUIT COURT
HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 19-CR-00123

COMMONWEALTH OF KENTUCKY      APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: ECKERLE, A. JONES, AND TAYLOR, JUDGES.

ECKERLE, JUDGE: Appellant, Mark Joshua Collins ("Collins"), seeks review of the Letcher Circuit Court's order requiring him to pay restitution for his crimes. After careful review, we affirm.

## I.      **FACTUAL AND PROCEDURAL HISTORY**

In 2019, a Grand Jury indicted Collins for the felony charges of Criminal Mischief in the First Degree and Theft by Unlawful Taking Over

$10,000. The two counts stemmed from the alleged cutting and removal of timber without the permission of the landowner, Carroll Smith ("Smith"), for profit.

During the next four years, the case languished, in part due to the coronavirus outbreak. Finally, the Commonwealth and Collins entered into criminal mediation to negotiate a settlement without trying the case. In May of 2023, the parties entered a plea agreement whereby the Commonwealth agreed to dismiss the theft charge and amend the felony criminal mischief charge to a misdemeanor offense for first-degree criminal trespass. The agreement recommended against jail time; rather, Collins would be sentenced to 365 days, which would be probated for two years. Particularly relevant here, the agreement stipulated that Collins (and his co-defendants) "shall remain liable . . . for any and all restitution to be determined at a restitution hearing held by the court within six (6) months of entry of this plea agreement." Trial Court Record ("R.") at 84.

One month later, in June of 2023, the Trial Court accepted the guilty plea outlined above. During the guilty plea colloquy, Collins stated that he did not receive any financial gains from his illegal timber cutting. He said that he worked as a day laborer operating a bulldozer for money. The Trial Court noted that Collins had nonetheless agreed to be liable for restitution for the timber that he had stolen from Smith.

Sentencing did not occur until February 2024, by which time more than six months had already elapsed since the entry of the plea agreement. At the sentencing hearing, Collins asked the Trial Court to strike the restitution provision of the plea agreement. Collins' then-counsel stated that she should have requested striking the restitution provision at the mediation because of Collins' claim that he did not profit from the sale of the trees and could not pay restitution. Counsel also asserted that the Trial Court would need to hold a hearing if it intended to order restitution.

The Trial Court ruled that it would sentence Collins for the misdemeanor offense that same day but would continue to wait to hold a hearing to determine the amount of restitution. Importantly, Collins did not object. In fact, Collins asked the Trial Court to delay the matter even further and refrain from setting the restitution hearing for at least four more months to enable Collins to complete his probationary period in a new job in Indiana.

The Trial Court sentenced Collins to 365 days in jail for trespass, probated for two years. After discussing the availability of the Commonwealth and Collins' counsel, the Trial Court scheduled the restitution hearing for April 18, 2024, roughly two and one-half months after sentencing. Again, and significantly, Collins did not object.

The Trial Court issued a final judgment the same date as the sentencing hearing. It left the restitution section of a form judgment blank. However, the Trial Court checked a box to indicate that Collins "shall not be released from probation supervision until restitution has been paid in full and all other aspects of probation have been successfully completed." R. at 106. That same date, the Trial Court issued an order of unsupervised probation that provided in relevant part that Collins "shall remain liable with the co-defendants for any and all Restitution." R. at 107.

One of the Commonwealth's witnesses did not appear on April 18, and the Trial Court reset the restitution hearing for one month later – May 21, 2024. Collins still did not object. In fact, Collins asked the Trial Court about postponing the restitution hearing even further, until August.

However, shortly before the new restitution hearing date in May, Collins obtained new counsel, who filed a written objection to holding a restitution hearing at all. New counsel insisted that the Trial Court had lost jurisdiction over the case because more than ten days had passed since entry of the judgment of conviction. Collins orally reiterated that claim at the commencement of the restitution hearing. The Commonwealth responded that Collins had waived the issue. The Trial Court overruled Collins' objection and conducted the hearing.

At the hearing, Smith testified that when he had learned that logging was occurring near his land he spoke with Collins, who responded that no logging would occur on Smith's property. However, a few days later Smith discovered that trees on his property had been cut. Smith testified that he had paid $7,925 for a survey to show that he owned the property at issue and $850 to a forester to assess the value of the cut trees and land damage ($8,775 total payment). The forester testified that he had estimated the value of the cut lumber to be $4,270 and the logging-based damage to Smith's land to be $1,140 ($5,410 total of additional loss). Thus, the total amount sought was $14,185. The Trial Court took the matter under advisement at the close of the hearing.

In August 2024, the Trial Court issued a terse restitution order, the body of which provides in its entirety as follows:

> **THE ABOVE MATTER** having come for hearing before the Court on March [sic, May] 21st, 2024 and the Court being otherwise sufficiently advised;
>
> **IT IS HEREBY ORDERED** that the defendants be held jointly and severally liable to Carroll Smith and provide restitution in the amount of $14,185.00 total.
>
> Gary Wayne Boggs, Mark Collins and Willie Halcomb ("Defendants") have pled guilty and have agreed to pay restitution in the amount of $14,185.00 for the full amount of the victim's losses under [Kentucky Revised Statutes] KRS 533.030(3);[1]

---

[1] KRS 533.030(3) provides in relevant part:

According to KRS 533.030(3), in a case where the victim has suffered monetary damages, the Court shall order the defendants to make restitution in addition to any other penalty provided for the commission of the offense.

R. at 125-26.

As this appeal is only that of Collins, we do not have the record in the case of Collins' co-defendants. The record in Collins' case shows that he agreed to make full restitution to Smith. The record does not show that Collins agreed that the restitution total would be $14,185, but rather that the amount would be determined by the Trial Court, who imposed the sought-after amount.

Collins then filed this appeal. He continues to confess that he is guilty and committed the crimes. He does not object to the amended misdemeanor, probation, or lack of jail time. He quarrels with the propriety of the restitution order.

## II.   ANALYSIS

Collins raises three interrelated arguments. First, he contends that the Trial Court lacked jurisdiction to order him to pay restitution because more than

---

When imposing a sentence of probation or conditional discharge in a case where a victim of a crime has suffered monetary damage as a result of the crime due to his or her property having been converted, stolen, or unlawfully obtained, or its value substantially decreased as a result of the crime . . . the court shall order the defendant to make restitution in addition to any other penalty provided for the commission of the offense.

-6-

ten days passed between the entry of the judgment of conviction and the restitution order. Second, he claims that the restitution order does not contain the information required by KRS 532.033 or precedent. Third, he argues that the Trial Court erred by imposing restitution without first considering his financial status.

We begin with the jurisdictional argument. Here, the Trial Court was statutorily required to order Collins to pay restitution. As we have held, "[t]he imposition of restitution is not discretionary." *Peterson v. Commonwealth*, 708 S.W.3d 435, 442 (Ky. App. 2025). *See also* KRS 533.030(3). Moreover, Collins' plea agreement mandated that he pay restitution. The only issue thus was the amount of restitution owed by Collins. As he did not stipulate to a specific amount of restitution, the Trial Court was obligated to hold a restitution hearing and had the discretion to determine the amount.

The issue is whether the Trial Court lost the ability to order Collins to pay restitution on the eleventh day after entry of the final judgment because "[g]enerally, a trial court lacks power to amend a judgment ten days after it is entered." *Fagan v. Commonwealth*, 374 S.W.3d 274, 278 (Ky. 2012) (internal quotation marks and citations omitted). We hold that the Trial Court did not forfeit its jurisdiction by delaying the restitution hearing because Collins agreed to this integral part of his plea; he failed to object to continuances on numerous occasions; and he even sought repeated delays himself.

The ten-day rule involves particular-case jurisdiction, not subject matter jurisdiction. As our Supreme Court explained, "[a] court's power to affect its own judgment within ten days of entry . . . is this latter category: jurisdiction over a particular case. Such questions go more accurately to the propriety of the exercise of jurisdiction rather than to the *existence* of jurisdiction." *Commonwealth v. Steadman*, 411 S.W.3d 717, 722-23 (Ky. 2013). Unlike subject matter jurisdiction, "*particular-case* jurisdiction is subject to waiver." *Id.* at 724.

Collins accurately notes that he raised a jurisdictional objection shortly before the May 2024 restitution hearing. However, he does not adequately address the fact that he had previously agreed several times to having the restitution hearing fall outside the ten-day window. Ignoring this reality does not dispense with it. First, the plea agreement stated that Collins agreed to be liable "for any and all restitution to be determined at a restitution hearing held by the court within six (6) months of entry of this plea agreement." R. at 84. Though the restitution hearing ultimately was held outside that six-month window as well, the agreement plainly shows that Collins consented to having restitution determined well in excess of ten days after pleading guilty.

Second, at his February 2024 sentencing, Collins did not object when the Trial Court set the restitution hearing for April 2024, roughly two months after

-8-

the sentencing and well after expiration of the ten-day period at issue. In fact, Collins had asked the Trial Court to schedule the hearing at an even later date.

Finally, Collins did not object when the Trial Court continued the April 2024 sentencing until May 2024. Yet again, Collins asked the Trial Court to schedule the hearing at an even later date. Thus, Collins himself wanted the hearing postponed more than once, even though he now complains that it was held too late.

"Almost all issues are subject to waiver, whether from inaction or consent, even in a criminal case . . . ." *Steadman*, 411 S.W.3d at 724. Collins did not object to the April or May 2024 restitution hearing dates. The opposite is true, in fact, since he asked for later hearing dates. Collins cannot properly argue that a hearing date was fatally tardy when he did not object to the date and at the same time even asked for a later one. His waiver here is clear, and the suggestion to the contrary is without reasonable foundation.

Finally, a Trial Court is not absolutely obligated to hold a restitution hearing within ten days after entry of a final judgment. Our Supreme Court has held that "[i]deally, a trial court should delay entering a final judgment until it decides the restitution question so that matter could be included in the final judgment." *Id.* at 725. However, our Supreme Court recognized:

> Because there may be reasons to enter an order regarding
> part of a sentence before entering an order as to another

> part, such as here when there may be a need for a
> separate hearing on a matter such as restitution, we do
> not make this requirement today. However, if a
> defendant does not make a clear waiver of the ten-day
> case jurisdiction rule, a court could lose jurisdiction over
> the case by doing so.

*Id.* In fact, though our Supreme Court concluded the delayed restitution hearing was not "best practices" it ultimately affirmed on waiver grounds a restitution order issued outside the ten-day jurisdictional window. *Id.*

Here, the delay in holding the restitution hearing was neither "ideal" nor "best practices." It was a contributory cause of this appeal, and it allowed potential error into the proceedings. The Circuit Court should have insisted that the sentencing and restitution occur together. And when that Court accepted a plea deal that called for a restitution hearing within six months, it should have ensured that the hearing went forward within that time – especially considering the years of delays in this case. Failing to do so here is unquestionably suboptimal. However, it does not translate into an invalidation of the restitution requirement Collins repeatedly agreed to adhere to and continually sought to delay. Indeed, we readily conclude that Collins waived any loss of particular-case jurisdiction long before the May 2024 restitution hearing occurred. Collins' jurisdictional objection was thus doomed as belated and deficient. As our Supreme Court colloquially put it in a similar situation in *Steadman*, "the issue was dead and decided when the appeal began." *Id.* at 726. To hold otherwise would invite chicanery to avoid the

-10-

mandatory payment of restitution for one's crimes. If a defendant does not believe that he should have to comply with restitution, he should not agree to it as part of his plea deal. And if his strategy is one of delay, he should not be heard to complain about lack of timeliness.

We next examine whether Collins is entitled to relief due to the lack of payment details in the restitution order. Collins admits that he did not raise this issue in the Trial Court but now insists that it is a sentencing issue that may be raised at any time. *See, e.g.*, *Commonwealth v. Moore*, 664 S.W.3d 582, 590 (Ky. 2023) ("The appellate court will automatically treat an unpreserved sentencing issue as though it was preserved for appellate review."). Alternatively, Collins seeks palpable error relief of this and the subsequent issue.

"There is no doubt that restitution is a proper component of a judgment imposing a final sentence." *Jones v. Commonwealth*, 382 S.W.3d 22, 28 (Ky. 2011). Nonetheless, our Supreme Court has held that for preservation to be presumed, the sentence must be "contrary to statute . . . or was made without fully considering what sentencing options were allowed by statute . . . ." *Id.* at 27. In other words, a true sentencing issue involves an illegal sentence. *Id.* ("We therefore regard the phrase, 'sentencing is jurisdictional,' simply as a manifestation of the non-controversial precept that an appellate court is not bound to affirm an illegal sentence just because the issue of the illegality was not presented to the trial

-11-

court."). For example, a restitution order that exceeded the statutory restitution cap in KRS 533.030(3) was a sentencing issue because that amount of restitution was illegal. 382 S.W.3d at 28.

However, other issues involving alleged errors in a defendant's restitution may be deemed procedural deficiencies, which are subject to palpable error review if not properly preserved. Even a restitution hearing that did not comply with due process requirements has been deemed a mere procedural deficiency. *See id*. at 28. The lack of specific payment details here pales in comparison to a deprivation of the restitution obligor's due process rights.

In sum, the payment details in Collins' restitution order are incomplete, but the order is "not an illegal sentence *per se*." *Id.* Collins' restitution order contains a total amount owed and identifies Smith as the payee. Thus, the lack of additional details is a procedural deficiency. As such, we must examine whether the issue is preserved. Collins admits that it is not. Therefore, we may review only for palpable error under Kentucky Rule of Criminal Procedure ("RCr") 10.26. "Under that rule, an unpreserved error may be reviewed on appeal only if the error is palpable and affects the substantial rights of a party. Even then, however, relief is appropriate only upon a determination that manifest injustice has resulted from the error." *Jones*, 382 S.W.3d at 29. A palpable error is a jurisprudentially intolerable defect "so egregious that it jumps off the page . . . and

-12-

cries out for relief." *Johnson v. Commonwealth*, 676 S.W.3d 405, 417 (Ky. 2023) (internal quotation marks and citations omitted).

We readily perceive the restitution order at hand is erroneous to the limited extent that it lacks payment details. KRS 532.033(4) requires a restitution order to "[s]et the amount and frequency of each restitution payment or require the payment to be made in a lump sum[.]" *See also, e.g.*, *Dillard v. Commonwealth*, 475 S.W.3d 594, 597 (Ky. 2015) ("An order of restitution must identify the person to whom restitution is owed, set the amount to be paid, and set the amount and frequency of restitution payments or require a lump sum payment."). However, not every error is sufficiently egregious so as to constitute a palpable error. Indeed, "[a] palpable error must involve prejudice more egregious than that occurring in reversible error." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks, brackets, and citation omitted).

Though not cited by the parties, we found and are persuaded by an unpublished, non-binding opinion issued by our Supreme Court in a case involving similar facts: *Cave v. Commonwealth*, No. 2013-SC-000542-MR, 2015 WL 1544451 (Ky. Apr. 2, 2015) (unpublished). In *Cave*, the restitution order did "not state to whom restitution should be paid or in what specific amounts." *Id.* at \*7. Here, the restitution order at least identifies the restitution payee. The defendant in *Cave* did not object to the lack of specifics before the Trial Court but argued on

-13-

appeal that the order's lack of specific payment details was among the reasons the order "'should be struck down . . . .'" *Id.* at \*9.

> Our Supreme Court held in relevant part as follows:
>
> KRS 532.033 provides the restitution order shall specify the person or organization to be paid and for the circuit clerk to make disbursement accordingly. Furthermore, the order shall set a payment schedule, if the payment is not a lump sum, and provide that the court will monitor the payment of restitution.
>
> Cave is correct that the order of restitution is deficient because it does not set forth the provisions required by KRS 532.032 and 532.033. However, the remedy for any such deficiencies, particularly when Cave did not ask the court to correct them, is to remand to the court with instructions for it to enter a proper order. It is not to "strike down" the order.

*Id.* Despite noting the technical deficiencies, our Supreme Court did not remand the case for entry of a more detailed order.[2] Consequently, neither shall we. "Indistinguishable cases should not yield different results." *Burton v. Commonwealth*, 300 S.W.3d 126, 148 (Ky. 2009) (Minton, C.J., concurring in part and dissenting in part).[3]

---

[2] The introductory paragraph of *Cave* ends simply with "we affirm" and the conclusion of the opinion simply states: "For the foregoing reasons, we affirm Cave's conviction." *Cave*, 2015 WL 1544451, at \*1, \*11. Interestingly, despite the Court agreeing that the restitution order was "deficient[,]" the section heading of the relevant portion of *Cave* states that the restitution order "Did Not Violate KRS 532.032 or 532.033." *Id.* at \*9.

[3] The record does not show what payments, if any, Collins has made or the response, if any, of the Commonwealth or Trial Court to any such payments. In other words, it is not clear that the lack of payment specifics has caused Collins to suffer any prejudice.

-14-

Finally, we conclude that Collins is not entitled to relief on his claim that the Trial Court committed a reversible error by "ordering restitution without considering [his] status as a poor person." Collins' Opening Brief, p. 11. We have held, albeit under factually distinguishable circumstances, that a restitution order that does not contain findings regarding the defendant's financial ability to pay is erroneous. *Bradley v. Commonwealth*, 642 S.W.3d 731, 740 (Ky. App. 2021); *Compise v. Commonwealth*, 597 S.W.3d 175, 181 (Ky. App. 2020). However, the case at hand is distinguishable from *Bradley* and *Compise*.

In *Bradley*, we expressly noted that the lack of findings regarding the defendant's financial status issue was preserved: "As to the last assignment of error, that the district court did not make a necessary factual finding regarding her ability to pay ordered restitution, Bradley is also correct. Bradley's counsel preserved this issue at the restitution hearing." *Bradley*, 642 S.W.3d at 740. Here, however, Collins did not preserve the issue regarding the lack of findings by the Trial Court regarding his alleged inability to pay restitution. Therefore, Collins would only be entitled to palpable error relief.

Also, as we have explained, our statements regarding the erroneous lack of financial status findings in *Compise* were dicta. *See Peterson*, 708 S.W.3d

at 443-44.[4]  Similarly, our statements regarding the lack of findings as to the

defendant's financial status in *Bradley* were dicta because we had already

concluded that the restitution hearing had violated Bradley's due process rights.

*Bradley*, 642 S.W.3d at 739-40.

---

[4] Specifically, we explained as follows in *Peterson* the reasons that the financial status discussion in *Compise* was dicta:

> Citing dicta from *Compise v. Commonwealth*, 597 S.W.3d 175, 181 (Ky. App. 2020), Peterson claims it is well settled that findings of fact should be made regarding a defendant's financial situation, and what, if any, monetary payments he could afford. The trial court having failed to make any such findings in the case *sub judice* should constitute manifest injustice, Peterson argues.
>
> In *Compise*, the defendant was granted pretrial diversion with a condition of that diversion agreement being the payment of restitution. *Id.* at 177. The defendant waived a restitution hearing though both the defendant and the Commonwealth submitted conflicting written proof of the appropriate amount of restitution owed. *Id.* The circuit court then determined the total amount of restitution owed, but failed to set forth any particular terms for its payment. *Id.* at 178. Compise failed to comply with the terms of diversion, including failure to make any payments on the restitution owed. *Id.* at 179. The circuit court revoked Compise's pretrial diversion and she was then sentenced and placed on probation. *Id.* Compise appealed the revocation of her diversion, but the issue of restitution was not before the appellate court. *Id.* at 181. Nevertheless, a review of the restitution order was undertaken. While the *Compise* Court stated that "the manner in which restitution was ordered in this case gives us pause," the Court only found "clear error" with the restitution order itself because it did not state "who [restitution] is to be paid to, set the amount of restitution to be paid and the amount and frequency of each payment." *Id.* at 181-82 (citation omitted).

*Peterson*, 708 S.W.3d at 443-44.

-16-

The takeaway from the dicta in *Bradley* and *Compise* is that a Trial Court should make findings regarding a defendant's ability to pay restitution, and a defendant may be entitled to appellate relief if the Trial Court does not – if the issue is preserved. But again Collins admits that he did not preserve the issue. Moreover, "[d]icta in an opinion is not authoritative or binding on a reviewing court." *Board of Claims of Kentucky v. Banks*, 31 S.W.3d 436, 439 n.3 (Ky. App. 2000).

Instead, we conclude that this appeal is squarely governed by our recent holding in *Peterson*, 708 S.W.3d at 444. In *Peterson*, we first noted that the failure to make findings regarding a defendant's financial status in a restitution decision was a procedural deficiency, not a sentencing issue, for which preservation is not required. *Id.* at 443 ("Peterson's complaints about the trial court's failure to inquire or make findings regarding his financial situation and ability to pay restitution are not complaints about an illegal sentence, but complaints about a procedural deficiency or procedural error.") (internal quotation marks and citations omitted). As such, Collins is entitled to relief only if we perceive the lack of financial status findings to be a palpable error. *Id.*

In *Peterson*, we rejected an argument that is functionally the same as that raised by Collins:

> **The failure of the trial court to inquire into Peterson's financial situation is not manifest injustice**. Because a

defendant's indigency has no bearing on the imposition of restitution, it is relevant only when setting the amount of any partial payments, the frequency of payments, and any sanction for non-payment . . . . Nothing precludes the trial court from conducting a subsequent hearing to determine Peterson's ability to pay upon his release from prison, and nothing precludes Peterson from seeking such a review. KRS 532.033(6) and (7) in fact require such a hearing before sanctions can be imposed for noncompliance . . . . Because this is a matter clearly placed within the authority of the trial court by both the legislature and our Supreme Court, there has been no manifest injustice . . . .

*Id.* at 444-45 (emphasis added) (paragraph break omitted). Though Collins was awarded probation whereas Peterson was not, our unmistakable holding in *Peterson* that a Trial Court's failure to inquire into a defendant's financial status before requiring restitution is not palpable error means that Collins is not entitled to palpable error relief.

### III.   CONCLUSION

For the foregoing reasons, the Letcher Circuit Court is affirmed.

JONES, A., JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Robert C. Yang
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Graham Pilotte
Assistant Attorney General
Frankfort, Kentucky